601 P.2d 728

**Lydia CHAVEZ, Plaintiff-Appellant,**

v.

**LECTROSONICS, INC., Employer and Pacific Indemnity Company, Insurer, Defendants-Appellees.**

**No. 3872.**

Court of Appeals of New Mexico.

Sept. 6, 1979.

Bruce P. Moore, Santa Fe, for plaintiff-appellant.

Jerrald J. Roehl, Richard A. Winterbottom, Jerrald J. Roehl & Associates, Albuquerque, for defendants-appellees.

## OPINION

SUTIN, Judge.

Summary judgment was granted defendants in a workmen's compensation case in which plaintiff made a false representation as to her physical condition in her application for employment with defendant. Plaintiff appeals. We reverse.

In 1966, while employed as a waitress in a cafeteria, plaintiff suffered a back injury. In 1969, the ruptured vertebra was removed. As a result of the injury, two workmen's compensation claims were filed. In 1975, plaintiff applied for work as an electronics assembler with defendant. During the interim period, plaintiff worked as an electronics assembler for three industries. While employed by defendant, plaintiff fell and suffered a back injury. In the application for employment, plaintiff was asked this question to which she made this answer:

Were you ever injured? No.

In a false representation case, *Martinez v. Driver Mechenbier, Inc.*, 90 N.M. 282, 562 P.2d 843 (Ct.App.1977) is controlling. *Martinez* says:

*To bar recovery*, three essential factors must be present: "(1) The employee must have knowingly and willfully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury." [90 N.M. at 283, 562 P.2d at 844.]

To be awarded summary judgment, the burden is on defendants to show that there is no genuine issue of material fact as to each of the three essential factors.

Plaintiff admits the *first* factor. She made a false representation as to her physical condition.

Defendant established the *second* factor as a matter of law. Defendant relied upon the false representation as a substantial factor in the hiring. An affidavit of the president of the defendant corporation stated this fact.

Plaintiff claims that defendant did not rely on the false representation to any significant extent based upon the following facts:

(1) Employment application forms submitted to other potential employees contained significant omissions.

(2) Recommendations for employment from employees of defendant were the preferred method of gaining new employees, and plaintiff was interviewed by reason of a recommendation of an employee of defendant. In some instances, the president of the defendant corporation did not bother to check an applicant who was known to several employees.

(3) Previous employers of plaintiff, except the employer at which place the prior injury occurred, were called and, in response to questions asked, said that plaintiff " 'did do good work and she was a good solderer.' "

Plaintiff says that these facts raise a reasonable inference that defendant was completely "uninterested in her background" other than the extent to which she could do the technical work; that defendant utilized an informal network of personal acquaintances and other employees to make that determination. "Once that determination was made for Plaintiff," she says, "any concern Lectrosonics might have had about Plaintiff ceased to exist." We disagree.

■ A reasonable inference can be drawn that defendant relied upon the fact that plaintiff was a good worker, but none of the facts presented bear any relationship to the existence of prior injuries. To establish a genuine issue of material fact, a reasonable inference drawn must be sufficient to create an actual contradiction of an established fact. Giving plaintiff the benefit of the rule that reasonable inferences must be construed in favor of plaintiff in her search for a genuine issue of material fact, we cannot conclude that the facts presented mean: "Defendant did not rely on the false representation made by plaintiff."

Defendants established there was no genuine issue of material fact with reference to the *first* and *second* factors.

With reference to the *third* factor, "a causal connection between the false representation and the injury," defendants failed to establish that there was no genuine issue of material fact. No medical testimony was proffered. Defendants relied upon unsworn medical reports and letters that were inadmissible in evidence. At the close of the argument on motion for summary judgment, the trial court said:

> No one needs to be long exposed to a back injury to know that persons with a history of a back injury cannot [say], if it is a serious injury . . . [and] two previous claims for compensation . . that there would be no causal connection from one injury to the other. The Court does not know the facts of the injury in this case, but I don't think the Court needs to know that, when one relies upon the fact that this is also a back injury . . . .. So, in the Court's view, the causal connection is undisputed as well. One can argue that it is not, but how can one get away from the fact that they are

exactly the same type injuries in both cases.

The trial court was mistaken. But the fault lies not with the court but with trial lawyers who refrain from presenting authoritative case law. Plaintiff's lawyer in this appeal was not one of the trial attorneys.

■ Under a uniform rule, causal connection must, with one exception, be established by expert medical testimony. *Daniels v. Gudis Furniture Co.*, 541 S.W.2d 941 (Tenn.1976); *Laminite Plastics Mfg. Co. v. Greene*, 561 S.W.2d 458 (Tenn.1978); *Foster v. Esis, Inc.*, 563 S.W.2d 180 (Tenn.1978); *Quaker Oats Co. v. Smith*, 574 S.W.2d 45 (Tenn.1978); *Dressler v. Grand Rapids Die Casting Corp.*, 402 Mich. 243, 262 N.W.2d 629 (1978), see dissenting opinion in which *Martinez, supra* is cited; *Rock Road Construction Co. v. Industrial Com'n*, 37 Ill.2d 123, 227 N.E.2d 65 (1967).

In *Daniels*, plaintiff had falsified his application. In 1969, he suffered a "pull" of the back muscles while employed elsewhere and received compensation benefits on the basis of five percent permanent partial disability. In 1974, while working for defendant, plaintiff also suffered a back injury. After stating that causal connection required a factual showing by expert medical testimony, the court said:

> There being no medical evidence tending to show a causal connection between the false representation made by appellant in his application for employment and the injury he sustained while working for appellee, appellant is entitled to benefits for the work-connected, permanent partial disability found by the chancellor. [541 S.W.2d at 942.]

The court further said:

> *Except in the most obvious cases*, such causation must be established by expert medical testimony. [*Id.*, 942.] [Emphasis added.]

Reference is made to *Floyd v. Tennessee Dickel Distilling Company*, 225 Tenn. 65, 463 S.W.2d 684 (1971). *Floyd* refers to the competency of a claimant to testify with respect to her own physical condition and disability. In an "obvious case," a workman can testify there was no causal connection, i. e., that he had recovered from a 1969 back injury to the extent that he was able to perform his duties in the same work undertaken with his previous employers without any physical difficulty. This testimony was sufficient to establish no causal connection even though a treating physician found nothing unusual about the workman's lumbar spine, and the examining physician could not opinionate as to the causal relationship between claimant's 1969 injury and that of 1976. *Laminite Plastics Mfg. Co., supra.*

■ Medical testimony on causation does not require proof to an absolute certainty. An employer can prevail where medical testimony opinionates that a workman has become an increased risk because of his previous permanent impairment or disability. *Foster, supra.* Under these circumstances, a previous back injury falsely represented is causally connected with the injury.

■ On the *third* factor, limited to the instant case, we hold the rule to be that (1) where an employer proves a previous permanent disability, and (2) that by medical testimony the risk of injury in his employment has increased, the employer has established a causal connection between the false representation and the injury. On the other hand, if a workman has proven that (1) his physical condition and disability is such that he was able to perform the same duties in prior employment without any physical difficulty, (2) before he made application for employment, and (3) he was able to perform the duties of his employment, no causal connection exists between the false representation and the injury.

■ In the instant case, defendants failed to establish a causal connection. On the other hand, plaintiff established that no causal connection existed because she was able to perform all of the duties as a solderer at previous employments. On the *third* factor, a genuine issue of material fact exists and summary judgment was erroneous

under Rule 56(c) and (e) of the Rules of Civil Procedure.

The rules stated above are not exclusive. There may be other facts or circumstances which play an important role in a determination of causal connection.

Another issue has been raised by plaintiff which deserves our consideration—waiver by employer of the defense of false representation because of "the intentional relinquishment of a known right."

Following oral argument on motion for summary judgment, but before judgment was entered, plaintiff filed an affidavit. She stated that the president of defendant corporation was advised of her prior back injury and surgery which he may have learned from other employees. While absent from work caused by diabetes, the president questioned her about the back injury and surgery, and knew the facts from six months to a year prior to her injury of June, 1976. When plaintiff asked for a promotion, which required heavy lifting, the president denied it because of her prior back injury.

 When defendant learned that it had been deceived by the falsification, it had the right to terminate her employment. The deception did not make the contract for her services void, but voidable. *Cooper v. McDevitt & Street Company*, 260 S.C. 463, 186 S.E.2d 833 (1973). With knowledge of the false representation, together with knowledge that plaintiff was an experienced electronics assembler, defendant continued plaintiff in her employment. This was sufficient evidence to show that defendant intentionally relinquished its right to terminate plaintiff's employment. By waiver, plaintiff is accepted as an employee free of any fraud or deception. A genuine issue of material fact exists whether defendant waived its defense under the falsification concept.

We recognize that in every case the workman falsifies his physical condition to obtain employment. It has been said that it now legally pays to lie, that we condone and invite misrepresentation. However, we must not forget that we commend injured workmen who seek employment to support a family rather than play the part of Rip Van Winkle, so long as the workman does not prejudice the rights of the employer. Whether the workman has damaged the employer with falsification rests within the judicial wisdom of district and appellate judges.

The Summary Judgment is reversed.

IT IS SO ORDERED.

HERNANDEZ, J., specially concurring.

LOPEZ, J., concurring in result.

HERNANDEZ, Judge (specially concurring).

In my opinion the defendants established a *prima facie* case that there was no material issue of fact as to any of the three factors necessary to bar recovery set down in *Martinez*. My two brethren do not agree that the defendants established "a causal connection between the false representation and the injury." It is my opinion that the causal connection was established by the following: attached to the deposition of T. M. Keenan, which is included in the record, is a letter dated April 21, 1977, from plaintiff's attending physician, Dr. Joseph Hollinger, to the insurance adjuster. This letter reads in part:

"I feel that it is highly unlikely that Mrs. Lydia Chavez will recover sufficiently to return to work. I feel that this is a combination of her original back injury, the surgery, the reinjury coupled with her overweight, diabetes, and emotional instability."

Attached to the plaintiff's demand for admissions as exhibit 11–D is a report from Dr. Hollinger dated February 23, 1977, about the plaintiff's condition. This report recites in part:

"I have been following the patient for several months and frankly I do not see any improvement and I doubt seriously that she will ever be able to go back to any type of work. I will continue following her, however, I feel that because of the multiple problems, emotional, over-

weight, and diabetes along with the laminectomy and recurrent back sprain, that there is little likelihood for any significant improvement."

There are, in my opinion, two material issues of fact which must be resolved at the trial of this matter. The first is whether the defendant, Lectrosonics, Inc., knew about plaintiff's prior back injury and surgery. The second is, if it is determined that they knew of plaintiff's injury, did they waive the defense provided by *Martinez?*

In an affidavit filed in the trial court in opposition to defendant's motion for summary the plaintiff stated the following, among other things:

"5. I was employed by Lectrosonics from January of 1975 until June of 1976. Mr. Thomas P. Gilmer, Jr. was advised of my prior back injury and surgery. I do not know exactly how he knew of this but I presume that he knew of it from Dorothy Moore who had originally recommended me who was fully familiar with that injury and surgery and from Celeste McLeod who worked in the office.

6. I have been a diabetic for many years and did lose some time from work as a result of my diabetes. When I was forced to be off work because of my diabetes, Mr. Thomas P. Gilmer talked to me about my being off work and asked if it was in connection with my back injury, questioned me about the back injury and the surgery, and did definitely know all about the back injury and surgery from six months to a year prior to the injury of June, 1976.

7. When there was an opening in the final assembly area, I asked to be promoted to that area where I would work with Connie Garcia, at that time Mr. Ted Ulibarri, the supervisor and Mr. Thomas P. Gilmer, discussed my going into the final assembly area and refused to approve this because of my prior back injury because this work required lifting heavy cabinets.

8. Approximately one year prior to my injury of June, 1976, Mr. Thomas Gilmer acknowledged to me that he was fully aware of my prior back injury and surgery in conversation discussing my absence from work as a result of my diabetes and then subsequently acknowledged that he was fully aware of this condition subsequently in refusing to permit me to work in the final assembly area."

Both Mr. Gilmer and Mr. Ulibarri denied any prior knowledge about plaintiff's back injury and surgery.

"When an employee makes false statements in his application for employment, the application is voidable at the employer's option and the employer may discharge the employee." *Swanson v. American Manufacturing Company*, 511 S.W.2d 561 (Tex.Civ.App.1974).

If the defendant, Lectrosonics, Inc., knew of the plaintiff's previous injury and surgery and elected not to discharge her it might be determined that the defense provided by *Martinez* was waived.

"[A] waiver is the intentional relinquishment or abandonment of a known right, and that the act of waiver may be evidenced by conduct as well as by express words." *Cooper v. Albuquerque City Commission*, 85 N.M. 786, 518 P.2d 275 (1974).