882 P.2d 559

**Kathleen LAMAY, Claimant–Appellant,**

v.

**ROSWELL INDEPENDENT SCHOOL DISTRICT and its insurer, New Mexico Public School Insurance Authority, Respondents–Appellees.**

**No. 14715.**

Court of Appeals of New Mexico.

Aug. 12, 1994.

Timothy J. Cusack, Cusack, Jaramillo & Associates, P.C., Roswell, for claimant-appellant.

Daniel G. Acosta, Reeves, Chavez, Greenfield, Acosta & Walker, P.A., Las Cruces, for respondents-appellees.

## OPINION

MINZNER, Chief Judge.

Kathleen Lamay (Worker) appeals from a compensation order denying benefits to her for a lower back injury she sustained on February 25, 1992 while employed as a cook for Roswell Independent School District (Employer). The workers' compensation judge (judge) denied benefits because he determined that Employer proved that Worker knowingly and wilfully made a false statement on which Employer relied, and thus successfully raised the false representation defense. *See generally Gray v. J.P. (Bum) Gibbins, Inc.,* 75 N.M. 584, 408 P.2d 506 (1965); *Sanchez v. Memorial Gen. Hosp.,* 110 N.M. 683, 798 P.2d 1069 (Ct.App.), *cert. denied,* 110 N.M. 653, 798 P.2d 1039 (1990). Worker's contentions on appeal raise an issue of first impression: whether the question the judge found she answered falsely was either too general or too ambiguous to support the false representation defense. She does not challenge the sufficiency of the evidence regarding any element of the defense.

After giving a background, we discuss the history and the nature of the false representation defense. We then address Worker's specific contentions regarding the inadequacy of the question in the employment application. We then adopt a test for determining adequacy, following which we answer Worker's question regarding whether as a matter of law the questionnaire in this case was overly broad or vague and that Employer's reliance could not be justified. We conclude that the question was not overly broad or vague as a matter of law and that Employer was entitled to rely upon Worker's answer without further investigation. However, because we have identified a new test for determining the adequacy of the question to elicit an answer on which an employer may rely, we remand to the Workers' Compensation Administration to permit the judge to consid-

er the evidence Employer offered in light of the new test. *See Whittenberg v. Graves Oil & Butane Co.*, 113 N.M. 450, 457, 827 P.2d 838, 845 (Ct.App.1991) (case remanded for further findings in light of clarification of appropriate test for determining employee/independent contractor status of an accountant), *cert. denied*, 113 N.M. 352, 826 P.2d 573 (1992); *State v. Tindle*, 104 N.M. 195, 200, 718 P.2d 705, 710 (Ct.App.1986) ("we remand this case to the trial court. On remand, the court should determine whether its decision granting defendant's motion comports with the analysis we have outlined here."). Accordingly, we vacate the order from which Worker has appealed and remand for further proceedings.

## BACKGROUND

It is undisputed that while working as a cook for Employer, Worker suffered an accidental injury in the course and scope of employment on February 25, 1992. The nature of injury was an "aggravation of mechanical back pain and L4 radiculopathy." Employer had proper notice of the accidental injury, and it appears clear from the record that but for the false representation defense, this was a compensable claim. The judge denied the claim, however, finding that (1) Worker had submitted a fraudulent employment application, (2) she had done so knowingly, (3) Employer had relied on the false statements, and (4) they concerned a condition that increased Worker's risk of injury. The relevant findings concern the following question in the application for employment:

I. PERSONAL: Do you have any condition which might limit you in job assignments or ability to work in the position for which you are applying: yes___ no X

Although she answered "no" to this question, Worker listed Capitan School Cafeteria in describing her experience and gave two Capitan personnel as references. In addition, she signed a general release for Employer to investigate her employment and medical history. When asked why she answered "no," Worker answered:

I didn't feel I had any condition that would hinder me doing the job.... I had been told by the doctors I had been to, to work, and work was the best thing I could do. When asked how she interpreted "any condition," she answered: "If I didn't know how to do the job, and I knew how to do the job."

Mr. Burch, who interviewed Worker for Employer, testified that he did not ask any questions about her physical condition, medical history, previous injuries, or any other health history or related questions. Mr. Burch checked Worker's references by telephoning Capitan Independent School District and sending a reference form letter to Dr. Childress in Capitan, one of the persons she listed as a reference on the application form. However, Mr. Burch did not ask Capitan personnel or Dr. Childress about Worker's medical history or any prior injuries. Mr. Burch testified that he did not ask Worker or her previous employer any further or more specific questions about her medical history because based on her written application he did not believe she had any problem.

Worker had suffered from lower back problems since 1987. She first visited a chiropractor, Dr. Farris, in June of that year; however, initially her major complaints involved her neck and shoulder. Worker saw Dr. Farris on a regular basis for her back and neck problems until January 26, 1989, when she sustained an injury to her lower back while employed at the Capitan Municipal Schools (Capitan) working as a cook. Following that accidental injury, Worker continued under the care of Dr. Farris until June 1990 when she moved with her family to Roswell. Because of the continuing pain in her lower back, Dr. Farris told Worker that she would need continuing treatment. He also told her that she should expect exacerbations of the lower back pain in relation to her workload. He noted that she worked with difficulty depending on her duties. While Dr. Farris placed no restrictions on Worker, he instructed her how to lift properly and told her to be careful. He felt that "if she had an easier job where she didn't have to be straining her back all the time, she would have less problems but she was always going to have some back problems." He also stated that there was no time between January 1989 until June 1990, when he last saw

Worker, when she was symptom-free. Worker's last visit to Dr. Farris preceded her application to Employer by about two months.

After moving to Roswell, Worker was referred to Dr. Diven, a medical doctor in Las Cruces who at the time was engaged in occupational medicine. He first saw Worker on July 25, 1990, which was approximately two weeks before she applied with Employer on August 8, 1990. Worker had been referred to Dr. Diven at the request of Capitan's insurer, who had recommended physical therapy. Dr. Diven testified that he understood from her history that Worker had made significant changes at both work and home regarding her activities in order to avoid pain. Worker described pain that was activity-related. Dr. Diven felt that Worker would benefit from physical therapy, which would help improve her muscle tone and limber her up. At the time Dr. Diven saw Worker, she had left her job at Capitan and was not working.

Employer hired Worker for the 1990–1991 school year, and during the summer of 1991 rehired her for the 1991–1992 school year. In the fall of 1991, Worker was being treated for the 1989 injury by Dr. Watson, who had taken over Dr. Diven's practice. In January 1992, Dr. Watson assigned Worker an impairment rating of fifteen percent. She did not advise Employer of the rating. Worker injured her lower back on February 25, 1992 while transferring cooked spaghetti from a large pot to a small colander.

The judge determined, and the parties do not dispute on appeal, that NMSA 1978, Section 52–1–28.3 (Repl.Pamp.1991) (effective January 1, 1991), which codifies the false representation defense, did not control with respect to Subsection B. Subsection 52–1–28.3(B) provides that the provisions of the section do not apply unless the written questionnaire "clearly and conspicuously discloses that the worker shall be entitled to no future compensation benefits if he knowingly and willfully conceals or makes a false representation about the information requested."

## DISCUSSION

Prior to January 1991, New Mexico case law had established and applied a defense of false representation as a bar to all workers' compensation benefits. *Sanchez,* 110 N.M. at 685–86, 798 P.2d at 1071–72. Professor Larson has described the false representation defense as arising from the premise that an employee performs service under a "contract of hire." 1C Arthur Larson, *The Law of Workmen's Compensation* § 47.00 (1991). "A false statement in an employment application does not of itself make the employment contract invalid." *Id.* at § 47.00(e). Rather, the defense "is a common-sense rule made up of a mélange of contract, causation, and estoppel ingredients." *Id.* § 47.53, at 8–418 [hereinafter Larson rule]. The Arkansas Supreme Court has held that its recognition of the Larson rule is based on a public policy that requires workers to respond truthfully to pre-employment questions about their health because the law requires the employer to take the worker as the employer finds him. *Shippers Transp. v. Stepp,* 265 Ark. 365, 578 S.W.2d 232, 234 (1979) (en banc). The basis of the defense in New Mexico is less clear. *Gray,* 75 N.M. at 587, 408 P.2d at 507–08, apparently was the first case in which the issue arose.

In *Gray,* the Supreme Court affirmed a trial court's award of benefits as supported by substantial evidence. 75 N.M. at 587, 408 P.2d at 507–08. The employee in *Gray* had previously had a heart attack, yet he answered "no" to the question of whether he had heart disease because he testified that he thought a disease was " 'something you can catch from somebody else.' " 75 N.M. at 587, 408 P.2d at 507. The trial court found that there was no knowing and wilful misrepresentation because the employee had only a third grade education, did not understand some of the questions, and took a long time to fill out the application:

> The trial court was in a position to observe the appellee and to hear him testify as to his understanding of the meaning of "heart disease" in determining the weight to be given his testimony. It is clear that the trial court in accepting his explanation con-

cluded that the witness was confused as to its meaning. *Id.* at 587, 408 P.2d at 507. The Supreme Court based its decision, by analogy, on its prior decision in an action upon a health and accident policy. *Id.* (citing for comparison *Mosely v. National Bankers Life Ins. Co.*, 66 N.M. 330, 347 P.2d 755 (1959)). In that prior decision, the Supreme Court observed: "It must be clear from the evidence that the false statement made by the applicant was knowingly false, and that it was material to the risk." *Mosely*, 66 N.M. at 334, 347 P.2d at 758.

*Martinez v. Driver Mechenbier, Inc.*, 90 N.M. 282, 562 P.2d 843 (Ct.App.1977), was the first case in New Mexico to apply the Larson rule. In *Martinez*, this Court set out a now-familiar three-prong test:

> "(1) The employee must have knowingly and willfully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury."

*Id.* at 283, 562 P.2d at 844 (quoting 1A Arthur Larson, *The Law of Workmen's Compensation* § 47.53 (1973)). "The burden is on the employer to prove each of the three elements." *Sanchez*, 110 N.M. at 686, 798 P.2d at 1072. In *Martinez*, this Court held that the trial court's findings satisfied the test and affirmed the conclusion that the worker was not entitled to benefits as a result of a falsified job application. *Id.* 90 N.M. at 283, 562 P.2d at 844. This Court did not discuss the evidence, perhaps because the worker's counsel had failed to comply with the appellate rules regarding briefing.

In one opinion, Judge Sutin described the rationale underlying the defenses as contractual. In that opinion, Judge Sutin said that when a worker affirmatively misstated or failed to reveal a condition that increased his or her risk of injury, the employer was entitled to terminate the worker's employment. *Chavez v. Lectrosonics, Inc.*, 93 N.M. 495, 499, 601 P.2d 728, 732 (Ct.App.), *cert. denied*, 93 N.M. 683, 604 P.2d 821 (1979). Judge

Sutin reasoned that in such circumstances the contract was voidable. *Id. See generally* 1 Arthur L. Corbin, *Corbin on Contracts* § 146, at 636 (1963) (contract secured by fraud not enforceable against party defrauded). Judge Sutin's reasoning is consistent with the stated premise of the Larson rule. However, the rule is broader than the contract law principle that Judge Sutin cited. *See* Larson, *supra* § 47.53, at 8–418. We have never said that a worker's conduct must rise to the level of actionable fraud, or even fraud sufficient to avoid performance on a contract, before an employer may assert the defense.

In *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 132, 767 P.2d 363, 371 (Ct.App.), *cert. denied*, 109 N.M. 33, 781 P.2d 305 (1988), this Court observed that the issue "of whether a person has acted knowingly or willfully is an issue of fact, rarely susceptible of proof by direct evidence." *Gray*, in its reliance on *Mosely*, suggests that it must be clear from the evidence that the statement was knowingly false, but we do not interpret that suggestion as a requirement that the employer prove this element by clear and convincing evidence. We note that Worker has not argued at trial or on appeal that Employer was required to prove any prong of the test by clear and convincing evidence.

We believe that the Larson rule derives its essential ingredients from the principle of equitable estoppel rather than contract law. *See* 1 Dan B. Dobbs, *Law of Remedies* § 2.3, at 84–86 (1993).

> An estoppel case has three important elements. First, the actor, who usually must have knowledge, notice or suspicion of the true facts, communicates something to another in a misleading way, either by words, conduct or silence. Second, the other in fact relies, and relies reasonably or justifiably, upon that communication. And third, the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct. A fourth element is that the actor knows, expects or foresees that the other would act upon the information given, or that a

reasonable person in the actor's position would expect or foresee such action. *Id.* at 85 (footnotes omitted). It is not necessary to prove actionable fraud or even fraud sufficient to avoid performance on a contract to establish equitable estoppel. *See id.* at 87. Further, except for the fact that equitable estoppel may arise from innocent or negligent misstatements, as well as a knowing or wilful misstatement, its elements are very similar to those encompassed by the Larson rule. *See Gonzales v. Public Employees Retirement Bd.,* 114 N.M. 420, 427, 839 P.2d 630, 637 (Ct.App.), *cert. denied,* 114 N.M. 227, 836 P.2d 1248 (1992). Finally, in *Gonzales,* we said that "the conduct of both the party to be estopped and the party seeking relief must be examined" and that "the party seeking to assert [equitable estoppel] must also demonstrate that its reliance was reasonable." *Id.* Such an addition to the Larson rule seems to be an appropriate mechanism for protecting workers. *Cf. Huisenga v. Opus Corp.,* 494 N.W.2d 469, 472 & 474 (Minn.1992) (in workers' compensation litigation, if an employer raises the Larson rule, which in Minnesota encompasses a requirement that the employer substantially and justifiably relied on a false representation in hiring an employee, the employee may raise issue of "whether the questions asked regarding disabilities complied with the requirement that they only inquire into job-related qualifications"). Under an equitable estoppel theory, the fact-finder must compare the conduct of both parties in order to determine whether there is a basis for precluding the worker from collecting benefits. *Id.* *See also In re Estate of Gardner,* 114 N.M. 793, 803, 845 P.2d 1247, 1254 (Ct.App. 1992), *cert. denied* (January 22, 1993). We conclude that under prior New Mexico cases, the principle of equitable estoppel provides an alternative rationale to the voidable contract theory on which Judge Sutin relies. We now turn to Worker's specific contentions.

Worker urges this Court to find that the job application Worker completed was ambiguous because the word "condition" is "basically left up to the interpretation of the person reading it" and can mean a personal, mental, medical, or physical condition or whatever the person reading it subjectively thought or considered. Moreover, Worker argues, the one question asked her is too vague, too indefinite and conducive to subjective and different interpretations: (1) to elicit the kind of job-related, medical history information in which Employer apparently was interested; (2) to trigger in Worker a duty to disclose the existence of her prior injury and physical condition; and (3) ultimately, as a matter of law, to serve as the basis for a denial of all benefits to Worker. *See Knight v. Industrial Elec. Co.,* 28 Ark.App. 224, 771 S.W.2d 797 (1989). Worker also argues that Employer's reliance on Worker's "no" answer to the question was not reasonable because Worker was never asked specific questions about her medical or claims history on the application, Mr. Burch did not make specific inquiries about Worker's medical condition, and nothing prevented Employer or Mr. Burch from doing so.

Employer argues that disposition of the appeal depends upon whether substantial evidence supports the judge's findings on the first and second prongs of either the three-prong test or the Larson rule. We disagree.

We believe Worker has raised a challenge not to the evidence but to the law applied. We believe Worker asks this Court to hold that the false representation defense was not available to Employer for two reasons: (1) the question was insufficient as a matter of law to elicit a false response, and (2) Employer unjustifiably relied on her response. The third prong of the test is not at issue on appeal.

Worker has framed her first issue as a challenge to the judge's understanding of the Larson rule. She twice states in her reply brief that this issue is not "a substantial evidence question." We therefore do not address the sufficiency of the evidence offered in support of the first prong of the Larson rule because Worker challenges the law applied rather than the evidence offered in support of the judge's findings. Regarding the second prong of the rule, because Worker has emphasized the nature of Employer's actions in interviewing her rather than Mr. Burch's credibility, which is a legal

argument, and because we rely on Worker's statements in her reply brief that Employer "wants to argue substantial evidence, which are not the issues involved in this appeal," we also do not address the sufficiency of the evidence offered in support of the second prong of the rule.

## A. Knowing and Wilful False Representation as to Physical Condition

Arkansas has recognized that some questions are so broad, vague, or general that they are insufficient to trigger a duty to disclose. *See College Club Dairy v. Carr*, 25 Ark.App. 215, 756 S.W.2d 128 (1988), where the Arkansas Court of Appeals affirmed the workers' compensation commission's findings that:

> "The employer knows which physical conditions or maladies would be relevant to fitness for the particular tasks he expects the applicant to perform. Therefore, employers relying upon the *Shippers Transport* affirmative defense must show that the employee was questioned in some degree regarding health history and present condition in such a way as to elicit responses likely to be worthwhile in assessing the employee's health history, condition, and capacity for performing the employment."

*Id.* 756 S.W.2d at 129. Saying that "reasonable minds could ... reach the conclusion" of the commission, the Court in *College Club Dairy* also affirmed the decision of the commission on the basis that the question " 'Do you have any physical defects?' " could reasonably be understood to ask about congenital defects rather than physical injuries. *Id.* 756 S.W.2d at 129–30; *see also Sawyer v. Mtarri*, 33 Ark.App. 125, 806 S.W.2d 7 (1991) (en banc); *Knight*, 771 S.W.2d at 798–800.

■ We do not dispute the general principle that a question may be so general or so ambiguous that it cannot be answered falsely or that questions may be illegal, and thus that an employer is not entitled to rely upon them. Further, the question asked may be so general or ambiguous that the fact-finder is entitled to conclude that a particular response was truthful, even if it was misleading or misunderstood. That is a principle that is not only consistent with our cases, but one

that our Supreme Court has applied. *See Gray*, 75 N.M. at 587, 408 P.2d at 507–08. However, we do not believe either of these principles are dispositive of this appeal.

■ We believe this case demonstrates the need for a refined approach to the first prong of the Larson rule, one that takes into account the elements of equitable estoppel not completely represented within the second and third prongs of the Larson rule. *See Dobbs, supra* § 2.3 at 85. That is, the three prongs of the Larson rule roughly correspond to the first three elements of equitable estoppel; both the Larson rule and the principle of equitable estoppel require knowing misrepresentation, reasonable reliance, and a related consequence to the one who relied. What we have not identified prior to this case as relevant to the Larson rule is the fourth element of equitable estoppel, which is foreseeability. The employer must show that "the actor knows, expects or foresees that the other would act upon the information given, or that a reasonable person in the actor's position would expect or foresee such action." *Id.* Thus, we believe the questions an employer asks of a worker must be questions on which the worker "knows, expects or foresees" or "that a reasonable person in the [worker's] position would expect or foresee" an employer would rely. Further, to establish foreseeability an employer must show that the worker understood at least in a general way the duties required in the job for which he or she applied, that the employer asked a question or questions a reasonable person would have understood as calling for disclosure of relevant medical history, and that the worker had a medical history a reasonable person would have viewed as relevant and within the scope of the question or questions asked.

We do not mean to suggest that the nature of the question is relevant solely to foreseeability. As we noted earlier, the question may be so general that it cannot be answered falsely or it may have been worded in such a way that a particular response was truthful, even if it misled the employer. Thus, the form of the question is relevant to the issue of knowing misrepresentation, as well as foreseeability. It may also be relevant, as

we have suggested, to the second prong of the test, the reasonableness of the employer's reliance. Is it possible to fashion a practical test that encompasses the various ways in which the form of the question becomes important in applying the first prong of the Larson rule? We think so.

█ The first prong of the Larson rule appears to incorporate a mixed question of law and fact. The appropriate analysis has at least two components. First, if the question asked is so overly broad that a court can say as a matter of law that a prospective employee could not be expected to provide an accurate answer, then the inquiry ends and the defense fails. For example, a question might be so overly broad that no one could be reasonably expected to understand its import, i.e., "How would you describe your health?" In such a case, the worker is entitled to a ruling that the defense is not available as a matter of law. In most cases, however, the fact-finder must undertake an objective inquiry regarding the question or questions at issue: whether a reasonable person, applying for the same job sought by the applicant, understanding the duties the job entails, and having had the same or similar medical history the applicant failed to disclose, would have understood that the question posed in the application called for a disclosure of that prior medical history? If not, then the failure to disclose does not bar recovery. That is, the worker is entitled to a ruling that the false representation defense is not available because the employer cannot show the worker's response is false. If, however, the fact-finder is satisfied that the question is one a reasonable person would have understood required disclosure, then the sole remaining issue for the fact-finder is whether or not the worker intentionally failed to disclose. Thus, if the question was one that should have elicited disclosure, then the worker's credibility is key. For example, as in *Gray*, the fact-finder may determine that a response was "truthful," even if it was inaccurate or simply misleading. If so, the worker is entitled to a ruling that the employer failed to carry his or her burden of proof regarding the false representation defense because he or she failed to show an intentionally false statement. Alternatively,

as in *Sanchez*, the fact-finder may determine that an inaccurate response was not truthful. If there is sufficient evidence to support that determination, the employer is entitled to have that factual determination affirmed on appeal.

We do not rule out the possibility, in an appropriate case, that a subjective test might also be appropriate. For example, even if a question did not pass the objective test, the applicant, because of information provided through other means, may have understood what was being asked, and therefore should have provided the information. *See State v. Archuleta*, 118 N.M. 160, 879 P.2d 792 (Ct. App.1994) (adopting alternative objective and subjective test for determining if an officer is in "uniform" and applying the subjective test to cover situations where in rural communities everyone knows the constable and recognizes his official status). Here, we are not concerned with a subjective test, and leave for another day a determination of when it may be appropriately applied.

█ Based on similarity of duties between the two jobs and Worker's medical history, we cannot say that the question at issue in this case was so overly broad that no one could be reasonably expected to understand its import. However, we are not certain how the fact-finder would have resolved the objective inquiry we identify in this opinion. In the absence of that resolution, we are reluctant to affirm the fact-finder on the basis that he might have concluded that the question was one a reasonable person on the facts would have known required disclosure, as well as rejecting Worker's explanation of why she had not disclosed her back condition. *See generally State v. Franks*, No. 14,853 (N.M.Ct.App. July 18, 1994), slip op. at 3–4 (although trial court will not be reversed on appeal when it has arrived at a correct result for the wrong reason, we will not apply rule when to do so would be unfair to appellant). "In particular, it would be unfair to an appellant to affirm on a fact-dependent ground not raised below." *Id.* In this case, the objective inquiry is fact-dependent, and Worker has not had an opportunity to argue the facts in relationship to this inquiry. For these

reasons, we will remand for further consideration. *See Whittenberg,* 113 N.M. at 457, 827 P.2d at 845; *Tindle,* 104 N.M. at 200, 718 P.2d at 710.

We next address the form of the question and its relationship to the second prong of the Larson rule. However, we resolve the second issue Worker raises on appeal in Employer's favor and affirm.

### B. Employer's Reliance

■ Worker argues that Employer's reliance on its screening policy is not justified because it violates the New Mexico Human Rights Act (NMHRA). *See* NMSA 1978, § 28–1–7 (Repl.Pamp.1991) (prohibiting discrimination "unless based on bona fide occupational qualification"). However, Employer contends that Worker is raising the issue of NMHRA for the first time on appeal. Worker asserts in her reply brief that this issue was brought up below in Worker's requested findings of fact and conclusions of law and mentioned in Worker's attorney's closing argument.

Worker's proposed Conclusions of Law Nos. 14 and 15 state:

14. Roswell Independent School District did not rely on any false representations made by Claimant in her application for employment.

15. Roswell Independent School District's reliance, if any, was not a substantial factor in hiring Claimant.

In his closing argument, Worker's attorney argues the policy behind the NMHRA: "We don't even give a disabled person a chance to interview, much less hire, much less disclose ...," but the NMHRA is not specifically mentioned. We conclude the issue of the impact of the NMHRA was not preserved for review by this Court under SCRA 1986, 12–216(A) (Repl.1992), because the conclusions and the closing argument failed to invoke a ruling that Employer had not justifiably relied on Worker's answer or that justifiable reliance is an element Employer must prove. *See generally Huisenga,* 494 N.W.2d at 474.

■ Further, at the time the question was asked, we are not persuaded that Employer should have had a different selection process. The parties have not discussed the Americans With Disabilities Act (Act). 42 U.S.C.A. §§ 12101–12213 (1994). The Act prohibits discrimination in the hiring process against a "qualified individual with a disability," unless selection criteria is "job-related" and "consistent with business necessity" and the job performance cannot be accomplished by "reasonable accommodation." 42 U.S.C.A. §§ 12112(a) & 12113(a). Although the Act presently affects employers' hiring practices, it was not in effect when Worker applied for the position with Employer in 1990. The Act proscribes the practice of refusing to grant an interview based on an affirmative response to the question to which Worker answered "no," but we will not impose this standard on Employer when the Act itself was not applicable at the time in question. *Cf.* 42 U.S.C.A. § 12112(b)(6) (under Act, a selection process may not screen out an individual or class with disabilities unless criteria is shown to be "job-related" and "consistent with business necessity").

■ The Subsequent Injury Act, NMSA 1978, §§ 52–2–1 to –14 (Repl. Pamp.1991), as amended, in effect since 1961 (the "SIA"), was enacted for the purpose of encouraging Employers to hire workers with a preexisting impairment. Section 52–2–2. The SIA allows the employer of such a person to file a certificate describing the preexisting permanent physical impairment in order to limit an employer's liability to the physical impairment arising from the current injury. Section 52–2–6. An employer is allowed to be reimbursed for compensation paid an employee for a disability due to the preexisting permanent physical impairment. Section 52–2–5. The question asked may not have served Employer's best interest under the SIA, but that is not a sufficient reason to preclude Employer from raising the false representation defense. It is one that employers may have included in their questionnaires in the belief that it was the least intrusive form of question they could ask.

As we have said, we determine that Worker did not raise a substantial evidence issue regarding the second prong of the Larson rule, Employer's reliance. She has instead argued on appeal that Employer's reliance

was not reasonable because Employer failed to ask her specific questions or make further, specific inquiries. Thus, Worker challenges on appeal the adequacy of the question asked to support the defense rather than Mr. Burch's credibility. For the reasons stated in addressing Worker's first argument, we are not persuaded that the question asked was inadequate as a matter of law. To the extent Worker argues that Employer failed to investigate Worker's prior medical history, we hold that in light of Worker's answer, this was not required. *See Kalbes v. Armour Indus. Sec. & Claims Ctr.*, 483 So.2d 124 (Fla.Dist.Ct.App.1986). In *Kalbes*, the employer presented testimony that it did not investigate the claimant's medical condition further because it relied on the claimant's false representations. *Id.* at 126. The Court held that the employer proved the second prong of the Larson rule. *Id.* at 127. This case is indistinguishable from *Kalbes*.

### CONCLUSION

Worker urges this Court to adopt the approach taken by the Arkansas intermediate appellate court in *Knight*. We decline to do so. We rely on *Gray* and *Sanchez*. We affirm the compensation order regarding the second issue raised on appeal. However, we vacate the compensation order and remand for further proceedings regarding the first issue.

IT IS SO ORDERED.

BIVINS, J., concurs.

APODACA, J., dissents.

APODACA, Judge, dissenting.

With all due respect to my colleagues comprising the majority, I disagree with their holding. I cannot join in the majority's reliance on *Gray v. J.P. (Bum) Gibbins, Inc.*, 75

N.M. 584, 408 P.2d 506 (1965), and *Sanchez v. Memorial General Hospital*, 110 N.M. 683, 798 P.2d 1069 (Ct.App.), *cert. denied*, 110 N.M. 653, 798 P.2d 1039 (1990), to affirm the workers' compensation judge (judge). Instead I would hold that, as a matter of law, the specific question asked of Worker in this appeal was so broad, vague, or general so as to make it insufficient to trigger a duty to disclose on the part of Worker and to permit reliance on the part of Employer. Any ambiguity in the question, in my view, should be construed against Employer. The majority having decided otherwise, I dissent.

The relevant question asked Worker on her job application was:

I. PERSONAL: Do you have any condition which might limit you in job assignments or ability to work in the position for which you are applying: yes __ no __

Worker checked "no" in response to this question.

I consider the following factors associated with this question as important to my determination that reversal of the judge's decision is warranted. First, the question focuses on an overly broad "condition," not a specific kind, such as a medical or physical condition.[1] In this regard, the question lends itself to an answer that calls for a purely subjective opinion. Second, it is undisputed that Employer asked Worker no other questions regarding her health or health history. Third, despite Worker having openly given references concerning Worker's previous employer and a general release signed by Worker authorizing Employer to investigate her work and medical history, Employer did not investigate further. Fourth, the evidence also showed that, had Worker checked "yes" in her application, she would not even have been interviewed for the position. Finally, it is worth noting that, after being hired, Work-

---

1. The majority acknowledges that NMSA 1978, Section 52–1–28.3 (Repl.Pamp.1991), codifies the false representation defense. That statute contains very specific provisions now governing the defense. Although the statute applies only prospectively, as the majority recognizes, nonetheless one cannot escape the specificity with which the defense is discussed in the statute. This specificity includes use of the phrase "worker's *medical* condition." (Emphasis added.) In us-

ing that phrase, the legislature left no doubt that the question must be understood clearly by the worker to trigger the necessary disclosure, a requirement I am advocating in this dissent. I should comment that, if the provisions of Section 52–1–28.3 were to apply to the facts of this appeal, Worker would most likely have prevailed, in my opinion. In contrast, under the majority's analysis, an unreasonable burden has been placed on Worker that is difficult to overcome.

er fully performed her job duties for a little more than one-and-one-half years before being injured. This last factor buttresses Worker's opinion (on which she based her answer to the question) that she honestly believed she possessed no condition that would prevent her from doing the job required.

In discussing the facts of this appeal, I do not intend to give the impression that I believe the issue on appeal is whether or not substantial evidence supported the judge's determination. Nor do I wish to leave the reader with the false impression that these facts were all-encompassing. To be sure, there was other evidence that could be reasonably viewed as supporting the judge's findings. I mention these facts only because they lend strong support to Worker's contention that the question asked was overly broad and thus ineffective to trigger a duty to disclose. I should add, however, that, had a substantial evidence question been raised on appeal, I would probably have still proposed reversal because I believe substantial evidence in the whole record did not support the judge's determination. In any event, the basis for my proposed reversal would make it unnecessary to reach the substantial evidence question.

The "false representation" attributed to Worker in this appeal, first by the judge below, and now by the majority's holding on appeal, is a far cry indeed from the deception perpetrated by the worker in *Sanchez.* In *Sanchez,* the worker, who years earlier had filed a workers' compensation claim for injuries sustained while working for another employer, expressly denied in his job interview and in the written application that he had ever injured his back or ever received any workers' compensation benefits. 110 N.M. at 686, 798 P.2d at 1072. He also answered "no" to the question: "If you are employed, do you have any limitations which must be considered for the position to which you have applied?" *Id.* at 687, 798 P.2d at 1073. When he was asked to list his previous employers, he *purposely* omitted the employment during which he had previously injured his back. *Id.* The worker in *Sanchez* also failed to disclose his previous back injury in

his response to the employer's initial interrogatories propounded to him, and finally, on appeal, the worker did not contest the judge's findings that the worker's "failure to complete the question on previous employment was for the purpose of avoiding investigation of his physical background and discovery of earlier back problems." *Id.*

In contrast, here, the form application did not ask whether Worker had a previous back injury or whether she had filed a workers' compensation claim. She was not asked about her medical or claims history at the interview. She did not omit listing the employer where she was injured as a reference on her application form. In fact, she listed her work with the Capitan School Cafeteria as part of her experience and listed two Capitan School personnel as references. Finally, she signed a general release for Employer to investigate her employment and medical history.

Additionally, Worker relies on the following factual aspects of this case. Worker's chiropractor and doctor testified that she was generally fit, cooperative, did not malinger, was energetic, and driven to work and to keep busy. Dr. Diven testified in his deposition that part of her continuing back problems arising out of the previous injury was a stiffness in the hamstrings and in her back that seemed to improve with activity and exercise. Worker also testified that, at the time she filled out the job application, neither the chiropractor nor Dr. Diven had placed any restrictions on her work. On the contrary, Worker testified that they told her to keep working and that work was "the best thing for her."

In light of this glaring contrast between the facts in *Sanchez* and the facts in this appeal, I find it difficult to accept the majority's holding. Instead, I would propose adopting the rule followed by the Arkansas courts, a rule essentially rejected by the majority.

Like New Mexico, Arkansas allows employers to raise the false representation defense. *See Shippers Transp. v. Stepp,* 265 Ark. 365, 578 S.W.2d 232, 234 (1979) (en banc). However, Arkansas mitigates the harshness of the rule by placing on the em-

ployer the burden of asking questions that elicit factual information regarding a worker's health and physical condition, rather than asking questions that require a worker to respond with an opinion. *See College Club Dairy v. Carr*, 25 Ark.App. 215, 756 S.W.2d 128, 129 (1988). The policy underlying this requirement is that:

> "[t]he employer knows which physical conditions or maladies would be relevant to fitness for the particular tasks he expects the applicant to perform. Therefore, employers relying upon the [false representation] affirmative defense must show that the employee was questioned in some degree regarding health and history and present condition in such a way as to elicit responses likely to be worthwhile in assessing the employee's health history, condition, and capacity for performing the employment. The question posed in this case is so general and broad that it conveys no message about any aspect of one's health that it may be germane to employability."

*Id.* Additionally, in *Knight v. Industrial Electric Co.*, 28 Ark.App. 224, 771 S.W.2d 797 (1989), the Arkansas appellate court stated:

> In light of the fact that the [false representation] defense relieves an employer of liability for otherwise compensable injury, it does not seem unreasonable to require questions calling for factual information rather than opinion. Whether one has ever had a workers' compensation claim or lost work because of an on-the-job injury are questions not hard to understand or difficult to answer. But the question on the application in this case not only calls for an opinion, it almost guarantees litigation. . . . We think the public policy that gave birth to the [false representation] defense should also seek to prevent, not promote, litigation.

*Id.* 771 S.W.2d at 799–800. I fully agree with the reasoning of the Arkansas courts that, in light of the complete loss of benefits that a worker might suffer, it is only fair to require an employer to ask specific questions about an applicant's physical condition that do not require an applicant to speculate concerning his or her "condition."

I consider it somewhat peculiar that the majority does not totally reject the reasoning of the Arkansas courts and in fact acknowledges that "a question may be so general or so ambiguous that it cannot be answered falsely." The majority's proposed "refined approach" to the first prong of the false representation defense incorporates the concept that a question can be so overly broad as a matter of law that an employee could not be expected to provide an accurate response. Nonetheless, the majority concludes that the specific question asked of Worker was not so general as a matter of law that Employer could not rely on Worker's response to raise the false representation defense. I respectfully disagree with the majority's determination. Because in my view an employer should bear the burden of formulating a question that would be reasonably understood to trigger the duty to disclose, I believe the employer should be precluded from relying on the worker's answer when the question is too general or vague. The majority apparently treats the first and second prong of the Larson rule separately. I, on the other hand, see them as connected.

If the question asked of Worker was not so vague as to preclude Employer relying on it as a matter of law, I cannot imagine what question would be. The word "condition" fails to even specify that it is requesting Worker to self-evaluate her health or physical abilities; the word could refer to a multitude of things, both physical and personal. The Arkansas courts have held that similar questions are too broad and general for an employer to rely upon them in raising the false representation defense. *See Sawyer v. Mtarri*, 33 Ark.App. 125, 806 S.W.2d 7, 8 (1991) (en banc) ("Do you have any physical limitations that preclude you from performing any work for which you are being considered?" held to be too vague); *Knight*, 28 Ark.App. 224, 771 S.W.2d at 797 ("Do you have any physical condition which may limit your ability to perform the job applied for?" held to be too vague); *College Club Dairy*, 756 S.W.2d at 129 ("Do you have any physical defects?" held to be too vague); *cf. Newsome v. Union 76 Truck Stop*, 34 Ark.App. 35, 805 S.W.2d 98, 99, 101 (1991) (holding that questions that "[h]ave you ever received

workers' compensation or disability income?" and "[i]f yes, for what reason did you receive workers' compensation or disability income?" sought "factual information that ... bears directly on one's health history."). In fact, the questions held to be too broad and general by the Arkansas courts were *more* specific than the question at issue here because they specified *physical* condition. *See Sawyer,* 806 S.W.2d at 8; *Knight,* 771 S.W.2d at 797; *College Club Dairy,* 756 S.W.2d at 129.

If this hurdle is surpassed (and, considering that the question asked of Worker in this case apparently survives this part of the majority's analysis, just about any question, no matter how vague, would), the majority's proposed analysis requires the fact-finder to pursue a factual inquiry, applying a reasonable person standard. I believe this test makes an otherwise straightforward inquiry much too complicated and may even cause more problems than it solves, despite the majority's genuine efforts to formulate a test that provides some guidance to the trier of fact. There are some things in the law that are better left untouched. I suspect such may be the case in the majority's attempt to clarify the fact finder's task.

Because I have concluded above that the question asked of Worker was overly broad as a matter of law, it should be obvious that any further inquiry, whether fact based or not, would be unnecessary under my proposed disposition. Even if it were possible to conclude this particular general question is not too broad, I would then determine, *as a matter of law,* that a reasonable person in Worker's situation, knowing that she was applying for the same type of work she had been performing and that she had no restrictions on her work, would not have understood that her medical history had to be disclosed in response to this question. In fact, I view the objective test discussed by the majority as merely a part of the first question—whether the question asked is too general or vague to permit an employer to rely on it. It is also not clear to me whether the majority intends its analysis to apply to cases that would be governed by NMSA 1978, Section 52–1–28.3 (Repl.Pamp.1991), or instead intends to limit the analysis to only

those cases to which that statute does not apply. As I noted previously in Footnote 1, the statute codifies the false representation defense in very specific language. I am uncertain whether the majority's analysis lends itself to a proper interpretation of the section's detailed provisions. As an alternative to the analysis adopted by the majority, I would favor the fact/opinion distinction adopted by the Arkansas courts.

The majority also holds that Employer was entitled to rely on the "no" answer Worker gave to the only question asked about any "condition." In so holding, the majority relies on *Kalbes v. Armour Industrial Security & Claims Center,* 483 So.2d 124 (Fla.Dist.Ct. App.1986), claiming that "[t]his case is indistinguishable from *Kalbes.*"

I disagree; *Kalbes* is plainly distinguishable. In *Kalbes,* the claimant expressly denied any prior back problem or previous injury on the employment application, and he did not even answer the question concerning whether he had received workers' compensation benefits. Here, in contrast, Worker was not asked any specific questions about her medical or claims history. Besides, the only question asked and the answer given in this case were not specific enough to obtain specific medical history and physical condition information related to job performance or to trigger an obligation to disclose. Consequently, as a matter of law, Employer's reliance on the question and answer was not justified or reasonable.

I believe that, in order for an employer to rely on the false representation affirmative defense, more should be required. An employer should ask questions designed to elicit relevant factual responses concerning a work applicant's physical condition and health history, rather than broad questions that require a worker, at his or her own risk, to express an opinion. Such a requirement would be in accord with previous New Mexico case law. *Compare Gray,* 75 N.M. at 587, 408 P.2d at 507–08, *with Sanchez,* 110 N.M. at 690, 798 P.2d at 1076.

In contrast, I believe the majority's holding undermines the legislature's stated public policy that the Worker's Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (Repl.

Pamp.1991), is "not to be given a broad liberal construction in favor of the claimant or employee on the one hand, *nor are the rights and interests of the employer to be favored* over those of the employee on the other hand." NMSA 1978, § 52–5–1 (Repl. Pamp.1991) (effective until January 1, 1991) (emphasis added); *accord* § 52–5–1 (effective January 1, 1991). Allowing an employer to raise the false representation defense based on an applicant's response to a broad, general question concerning "condition," such as the one asked of Worker here, unjustifiably favors the employer's interests over those of the claimant. In my view, with its decision in this appeal, the majority has lent support to the criticisms that the Act has encountered in the past few years, namely that, instead of being neutral (neither pro-worker nor pro-employer), the Act places additional burdens on claimants, burdens that are unfair and were not intended by the legislature.

In summary, I would hold that, as a matter of law, the question asked of Worker by Employer was so broad and vague that it was not sufficient to trigger a duty to disclose. As a result, Employer should not be allowed to claim that it relied on Worker's answer. For these reasons, I would reverse.