767 P.2d 363

**Richard TALLMAN, Claimant–Appellee,**

v.

**ABF (ARKANSAS BEST FREIGHT), Self–Insured, Respondent–Appellant.**

**No. 10125.**

Court of Appeals of New Mexico.

Oct. 13, 1988.

Certiorari Denied Nov. 21, 1988.

Bruce P. Moore, Albuquerque, for claimant-appellee.

Susan L. Snyder, Gregory P. Smith, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for respondent-appellant.

Carlos G. Martinez, Butt, Thornton & Baehr, P.C., Albuquerque, for amicus curiae, New Mexico Defense Lawyers' Ass'n.

William H. Carpenter, Albuquerque, for amicus curiae, New Mexico Trial Lawyers' Ass'n.

## OPINION

BIVINS, Judge.

Respondent, Arkansas Best Freight (ABF), a self-insured employer, appeals a compensation order of the Workers' Compensation Division (WCD) awarding claimant Tallman temporary total disability and other benefits. ABF contends WCD erred by finding that: (1) Tallman suffered a compensable accidental injury on September 5, 1986; (2) Tallman was temporarily totally disabled as of September 5, 1986, as well as at the time of the hearing; and (3) Tallman did not willfully and knowingly misrepresent his physical condition when he applied for employment. As a fourth ground for reversal, ABF further asserts that WCD failed to find that Tallman willfully exposed himself to. injury. Additionally, this court requested the parties, and invited amici curiae, to address the question of what standard of review applies to appeals from decisions by WCD. We hold that the whole record standard of review applies. Applying that standard to the issues raised, we affirm.

Summarizing the decision of WCD, the hearing officer found and concluded that Tallman sustained a compensable accidental injury on September 5, 1986, in the form of a disk protrusion at the L4–5 level of the spine, which rendered him temporarily and totally disabled. The hearing officer also found that Tallman had not reached maximum medical improvement, that he would require future medical treatment, and that he would benefit from vocational rehabilitation. ABF's appeal focuses on other findings and evidence concerning Tallman's pre-existing painful congenital back problem, first diagnosed in 1977, medical advice given at that time with respect to his job activities, his failure to reveal the congenital condition on his job application, and his continuing to do heavy work contrary to medical advice. The appeal also challenges the finding of temporary total disability. We discuss in more detail the facts surrounding these contentions under the points raised. Before doing so, we determine what standard of review to apply.

STANDARD OF REVIEW

Prior to the legislative creation of the workmen's compensation administration, predecessor to the current workers' compensation division of the New Mexico Department of Labor, claims for work-related injuries and diseases were heard by the district courts. In reviewing findings of fact made by the district courts in workers' compensation cases, the appellate courts in New Mexico applied the traditional substantial evidence standard of review as enunciated in *Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App.1985). That standard required, among other things, that we view the evi-

dence in the light most favorable to support the trial court's findings and that we disregard all evidence unfavorable to the challenged findings. Under that standard, we also recognized that it was the sole responsibility of the trier of fact to weigh the testimony, determine the credibility of the witnesses, reconcile inconsistencies, and determine where the truth lies. To emphasize the narrowness of review under this traditional standard, we likened it in *Sanchez* to an examination of the evidence through a "small aperture." *Id.* at 476, 679 P.2d at 159. Thus, once we find enough substantial evidence to support the trial court's finding, our task is complete and we look no further.

The supreme court in *Duke City Lumber Co. v. New Mexico Environmental Improvement Board*, 101 N.M. 291, 681 P.2d 717 (1984), however, while confirming the applicability of the substantial evidence standard for court-tried cases, modified and supplemented it with the whole record standard of review for findings of fact by administrative agencies. In *Strickland v. Coca–Cola Bottling Co.*, 107 N.M. 500, 760 P.2d 793 (Ct.App.1988), we assumed, but did not decide, that the whole record review standard applies in worker's compensation cases decided by WCD. We now hold it does apply. Because WCD is an administrative entity, the whole record standard of review adopted by the supreme court in *Duke City* applies. This court is governed by New Mexico Supreme Court precedent. *Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.; Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

We do not read NMSA 1978, Section 52–5–8(B) (Repl.Pamp.1987) as requiring a different result. That section provides in part that "[a] decision of a hearing officer is reviewable by the court of appeals in the manner provided for other cases * * *." *Duke City* had been decided when Section 52–5–8 was enacted. The legislature is presumed to know the existing law. *Bettini v. City of Las Cruces*, 82 N.M. 633, 485 P.2d 967 (1971).

We requested the parties to brief the question of whether whole record review applies to appeals from WCD. We also invited amicus briefs. While the parties and amici seem to generally agree the modified standard applies, there is no consensus as to how it works. The parties and amici raise questions regarding application of the whole record review standard. For example, one brief asks the question that if the reviewing court does not reweigh the evidence, then what did the supreme court mean in *Duke City* when it said the reviewing court would decide "whether *on balance*, the agency's decision was supported by substantial evidence"? *Id.*, 101 N.M. at 293, 681 P.2d at 719 (emphasis added). Counsel adds that "if the Appellate Court is not weighing evidence or judging the credibility of the witnesses, then why is it considering evidence other than [the] evidence supporting the * * * Hearing Officer's findings?"

Whole record review, as we read *Duke City*, does not contemplate or permit weighing the credibility of live witness testimony by the reviewing court. This would be impracticable, if not impossible. An appellate court does not observe the demeanor of live witnesses, cannot see a shift of the eyes, sweat, a squirm, a tear, a facial expression, or take notice of other signs that may mean the difference between truth and falsehood to the fact finder. Even an inflection in the voice can make a difference in the meaning. The sentence, "She never said she missed him," is susceptible of six different meanings, depending on which word is emphasized. Had the *Duke City* court intended to overrule the long line of cases in this state which defer that function to the fact finder, we believe it would have said so.

In quoting from its earlier case of *New Mexico Human Services Department v. Garcia*, 94 N.M. 175, 608 P.2d 151 (1980), the *Duke City* court makes clear that the whole record standard of review for findings of fact does not abrogate the substantial evidence rule as that rule has existed in New Mexico. A reviewing court may not reweigh the evidence and reassign the preponderance of evidence under either standard.

■ Whole record review does, however, contemplate a canvass by the reviewing court of all the evidence bearing on a finding or decision, favorable and unfavorable, in order to determine if there is substantial evidence to support the result. We analyze and examine all the evidence and disregard that which has little or no worth. As an example, under the legal residuum rule, an administrative agency's decision must be supported by some evidence that would be admissible in a jury trial. *Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.* If the only support found is inadmissible hearsay, then we may set aside the agency's finding or decision. In effect, whole record review involves a winnowing process.

We understand the reference in *Duke City* to balancing to mean that the reviewing court, after examining the evidence in the manner just described, decides whether there is evidence for a reasonable mind to accept as adequate to support the conclusion reached. The test is one of reasonableness. Viewing the live witness testimony as the fact finder did and considering all other evidence, favorable and unfavorable, and disregarding that which is discredited, we then decide if there is substantial evidence in the whole record to support the agency's finding or decision. *See McMillian v. Schweiker*, 697 F.2d 215 (8th Cir. 1983), as an example where the reviewing court, on whole record review, concluded the agency's decision was not sustainable.

In most cases, the administrative agency performs more than one function. It may be the complainant, the prosecutor, and the fact finder. It is those dual roles that prompts the reviewing court to closely scrutinize agency decisions, rather than acting as a rubber stamp.

References to language in several cases decided since *Duke City*, as well as the seminal case on the subject, *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), may be useful. We then look at cases from this court decided since *Duke City*.

In *National Council on Compensation Insurance v. New Mexico State Corporation Commission*, 107 N.M. 278, 282, 756 P.2d 558, 562 (1988), the supreme court summarized the whole record review standard as follows:

In *Duke City Lumber Co. v. New Mexico Environmental Improvement Board*, 101 N.M. 291, 681 P.2d 717 (1984), this Court held that for purposes of reviewing administrative decisions the substantial evidence rule is expressly modified to include whole record review. *Id.* at 294, 681 P.2d at 720. Under whole record review, the court views the evidence in the light most favorable to the agency decision, *Wolfley v. Real Estate Comm'n*, 100 N.M. 187, 668 P.2d 303 (1983), but may not view favorable evidence with total disregard to contravening evidence. *New Mexico Human Servs. Dep't v. Garcia*, 94 N.M. 175, 608 P.2d 151 (1980).

To conclude that an administrative decision is supported by substantial evidence in the whole record, the court must be satisfied that the evidence demonstrates the reasonableness of the decision. No part of the evidence may be exclusively relied upon if it would be unreasonable to do so. The reviewing court needs to find evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency. *See Sandoval v. Dep't of Employment Sec.*, 96 N.M. 717, 634 P.2d 1269 (1981).

*See also* footnote 2, *In re Application of the Burlington Northern Ry. v. Corporation Comm'n*, 107 N.M. 582, 761 P.2d 855 (1988).

Stated another way, the United States Supreme Court, in *Universal Camera*, said:

[I]t [substantial evidence] "must do more than create a suspicion of the existence of the fact to be established. * * * [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Labor Board v. Columbian En-*

ameling & Stamping Co., 306 U.S. 292, 300 [59 S.Ct. 501, 505, 83 L.Ed. 660] [1939].

Id., 340 U.S. at 477, 71 S.Ct. at 459. Continuing, Universal Camera makes clear what is not involved in whole record review:

To be sure, the requirement for canvassing "the whole record" in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence. Nor was it intended to negative the function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect. Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo. Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view.

Id. at 488, 71 S.Ct. at 465. As Justice Frankfurter makes clear in Universal Camera, "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Id. at 488, 71 S.Ct. at 464. See also McMillian v. Schweiker.

A reviewing court may not, however, substitute its judgment for that of the administrative agency. See also Erickson Transp. Corp. v. I.C.C., 728 F.2d 1057 (8th Cir.1984); Elliott v. New Mexico Real Estate Comm'n, 103 N.M. 273, 705 P.2d 679 (1985). The possibility of drawing two inconsistent conclusions from the evidence does not mean the agency's findings are unsupported by substantial evidence. Erickson Transp. Corp. v. I.C.C. Under the

modified standard, the reviewing court applies the substantial evidence test to the entire record; contrary evidence may not be ignored. The agency's findings will not be disturbed so long as they are supported by substantial evidence on the record as a whole.

While the administrative agency's findings are entitled to respect, they must nonetheless be set aside when the record before the reviewing court clearly precludes the agency's decision from "being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both." Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. at 490, 71 S.Ct. at 466. The worth of the testimony, as we understand, is viewed as the agency viewed it, not as viewed independently by the reviewing court.

In National Council, the supreme court stated that the reviewing court views the evidence in the light most favorable to the agency decision. In Trujillo v. Employment Security Department, 105 N.M. 467, 734 P.2d 245 (Ct.App.1987), this court said it was unlikely the Duke City court intended on the one hand to require a reviewing court to consider all conflicting evidence and not just favorable evidence and, on the other hand, to continue to view the evidence in the light most favorable to the agency. National Council was decided after Trujillo and makes clear the supreme court did intend a favorable light view of the agency's decision.

We now interpret what appeared as a contradiction in Trujillo not to be a contradiction at all. The reviewing court starts out with the perception that all evidence, favorable and unfavorable, will be viewed in the light most favorable to the agency's decision. This would, however, not preclude the court from setting aside the agency decision when it cannot conscientiously say that the evidence supporting the decision is substantial, when viewed in the light that the whole record furnishes. Univer-

*sal Camera Corp. v. National Labor Relations Bd.*

Several recent cases since *Duke City* have suggested that independent findings may be made by the reviewing court under the whole record standard. *Perkins v. Department of Human Servs.*, 106 N.M. 651, 748 P.2d 24 (Ct.App.1987); *Cibola Energy Corp. v. Roselli*, 105 N.M. 774, 737 P.2d 555 (Ct.App.1987); *Trujillo v. Employment Sec. Dep't.* This may have caused some to think that, in reality, the appellate courts were reweighing the evidence.

Under certain limited circumstances, a reviewing court has always been able to make independent findings contrary to the fact finder. *See, e.g., Wilson v. Richardson Ford Sales, Inc.*, 97 N.M. 226, 638 P.2d 1071 (1981) (where the trial court's findings are contrary to undisputed evidence in the record); *Martinez v. Universal Constructors, Inc.*, 83 N.M. 283, 491 P.2d 171 (Ct. App.1971) (where the evidence is documentary or by way of deposition). In these situations, it would seem not to matter whether review is on the record as a whole or under the substantial evidence standard.

■ We must be mindful, however, of the essential fact-finding role of administrative agencies and the deference accorded them because of their knowledge and expertise. *See Groendyke Transp., Inc. v. New Mexico State Corp. Comm'n*, 101 N.M. 470, 684 P.2d 1135 (1984). Based on our discussion and our understanding of the whole record review standard as adopted in *Duke City*, the reviewing court ordinarily should not make independent findings except in the limited circumstances noted.

We recognize that in *Cibola*, relying on *Trujillo*, we said whole record review allows independent findings by the reviewing court reaching a contrary result from that of the administrative agency where the administrative agency's decision is not supported by substantial evidence. While implying that this court was making an independent finding, this court in *Cibola* actually reversed and remanded with instructions that the board enter judgment in favor of the taxpayer. In short, what we did

was determine that the assessor had failed in his burden to show a correct valuation.

■ When an agency's decision cannot be upheld as supported by substantial evidence based on a review of the whole record, the reviewing court will ordinarily remand for appropriate action below. In such instances, the party having the burden of proof will have failed on the issue in question.

Applying the whole record review standard, we now turn to issues raised on appeal.

## WHETHER TALLMAN SUSTAINED A COMPENSABLE INJURY

Although labeled in part as conclusions of law, WCD found that Tallman sustained an accidental injury in the form of a disk protrusion at the L4–5 level, and that such accidental injury arose out of and in the course of his employment with ABF and was necessarily incidental to that employment. *See Edens v. New Mexico Health & Social Servs. Dep't*, 89 N.M. 60, 547 P.2d 65 (1976) (appellate court not bound by labels as to whether determination below is a finding of fact or conclusion of law). ABF attacks this finding on two grounds. First, it claims no medical testimony fixes a definite time for the . occurrence of the bulging disk, much less places the occurrence at work as opposed to non-work activities. Interwoven into this argument is the question of medical causation. Second, ABF claims there exists no competent medical testimony that the bulging disk, as opposed to a pre-existing congenital problem, rendered Tallman disabled.

That Tallman sustained no specific, identifiable episode or incident at work is without dispute. In August 1986, Tallman was examined by Dr. Edward Feil, a board-certified orthopedic surgeon. Tallman complained of back pain radiating to both hips and related a personal history of working as a dock worker loading and unloading trucks that involved repetitive bending and heavy lifting. Following a CT scan performed on September 5, 1986, Dr. Feil diagnosed a disk protrusion at the L4–5 level. Dr. Feil said Tallman has a permanent

physical impairment at fifteen percent. Although he could not fix a definite point in time when the disk ruptured, the CT scan findings, coupled with Tallman's inability to continue working after the date of the scan, provided the basis for fixing the accidental injury and resulting disability on September 5, 1986. Dr. Feil attributed the disk protrusion and resulting impairment to Tallman's work; "continuous lifting at his job would be the cause." He gave this opinion to a medical probability. NMSA 1978, § 52–1–28 (Orig.Pamp.).

ABF claims Dr. Feil "undermined" his opinion when, on cross-examination, the doctor could not pinpoint the exact date the rupture occurred. The employer also cites to testimony of Dr. Sidney Schultz, a board-certified orthopedic surgeon, who, while disagreeing that the disk protrusion was an abnormal finding in Tallman, said that even if it were, it could have occurred anytime since 1977, and there is no way of determining the precise date of the injury.

First, we do not read Dr. Feil's deposition testimony as contradictory, as ABF claims. He steadfastly maintained that the repeated bending and lifting was the most probable cause of the injury and resulting impairment; he just could not say exactly when it occurred. Further, even if Dr. Feil's direct testimony was contradicted by his testimony on cross-examination, that conflict was for the hearing officer to reconcile. *Montano v. Saavedra*, 70 N.M. 332, 373 P.2d 824 (1962).

■ While the time, place, and cause of the injury must be definite, *see Herndon v. Albuquerque Pub. Schools*, 92 N.M. 635, 593 P.2d 470 (Ct.App.1978), we believe WCD could find that an accidental injury occurred on September 5, 1986. Although Tallman had suffered pain since 1977, the pain he experienced in 1986 was different. Moreover, it became so severe he could no longer work. The fact that Tallman could work up until September 1986, but not after, coupled with the diagnosis on that date of the source of his disabling pain, provides adequate support for the findings made.

The circumstances of this case are similar to those where the injury is gradual and progressive and not immediately discernible, so that the precise date of the accident is uncertain. *See, e.g., Specialty Cabinet Co. v. Montoya*, 734 P.2d 437 (Utah 1986) (progressive back injury from normal stresses and strains of employment activity is compensable accidental injury in the course of employment). Such cases have involved breathing dust or gases, using allergic soap, strain, etc. For a collection of these cases, see *Webb v. New Mexico Pub. Co.*, 47 N.M. 279, 141 P.2d 333, 148 A.L.R. 1002 (1943), and *Stevenson v. Lee Moor Contracting Co.*, 45 N.M. 354, 115 P.2d 342 (1941). As *Webb* points out, although there must be a time when it can be said with certainty that an "accidental injury" has occurred, the cause and coming into existence of evidence characterizing it as a compensable injury need not be simultaneous events. We believe such is the case here.

■ As to ABF's claim that there is no competent evidence that the bulging disk alone, as opposed to the pre-existing congenital defect, rendered Tallman disabled, we disagree. While Dr. Feil could not break down the amount of pain attributable to each condition, he said it was likely the disk was causing more pain. Dr. Feil testified that the fifteen percent impairment included the disk protrusion and "some muscle weakness like loss of motion related to [the protrusion]." He took five percent "right off the top" for the protrusion, but could not allocate the remaining ten percent. Such allocation, however, is not required.

■ Even if Tallman's accidental injury results in only five percent impairment, this may translate into temporary total disability if Tallman can establish the inability to perform his duties prior to the date of maximum medical improvement. *See* NMSA 1978, § 52–1–26 (Cum.Supp.1986); *Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.1977) (once causation is established by appropriate medical evidence, extent of disability may be established by plaintiff). The fact that Tallman had a pre-existing physical impairment, separate from and aggravated by an accidental injury, does not prevent recovery.

*See Reynolds v. Ruidoso Racing Ass'n, Inc.,* 69 N.M. 248, 365 P.2d 671 (1961); *Moorhead v. Gray Ranch Co.,* 90 N.M. 220, 561 P.2d 493 (Ct.App.1977).

■ We hold that once Tallman established that the accidental injury caused disability, it matters not whether a pre-existing condition contributed to the ultimate disability. *See Reynolds v. Ruidoso Racing Ass'n, Inc.;* NMSA 1978, §§ 52–2–1 to –13 (Repl.Pamp.1987) (Subsequent Injury Act).

We reject ABF's contentions under this point.

### TOTAL DISABILITY

ABF admits there is evidence that Tallman is unable to perform the duties of a dock worker. Therefore, according to ABF, the issue is whether Tallman is completely unable to perform any work he is fitted for by age, education, training, and previous work experience. *See Amos v. Gilbert Western Corp.,* 103 N.M. 631, 711 P.2d 908 (Ct.App.1985). ABF apparently relies on NMSA 1978, Section 52–1–24 (Orig.Pamp.), which defines total disability and contains a two-prong test. It focuses on the second prong. ABF relies on the incorrect statute and misconstrues WCD's finding.

WCD found (although denominated as conclusions) that "TALLMAN is totally temporarily disabled from performing the duties of the work he was performing at the time of the accidental injury," and that "TALLMAN had not reached maximum medical improvement." Those findings track the language of Section 52–1–26, which provides: "As used in the Workmen's Compensation Act ... 'temporary total disability' means the inability of the workman, by reason of accidental injury arising out of and in the course of his employment, to perform his duties prior to the date of his maximum medical improvement."

Because the accidental injury occurred while that section was in force, it applies.[1]

ABF does not challenge either the findings as made or application of this particular section. Accordingly, we do not address its argument.

### WHETHER TALLMAN KNOWINGLY AND WILLFULLY MISREPRESENTED HIS PHYSICAL CONDITION IN HIS APPLICATION FOR EMPLOYMENT

■ ABF contends Tallman knowingly and willfully misrepresented his physical condition when he applied for a position as dockman/city driver with Navajo Freight Lines, ABF's predecessor, in September 1977, and when he reapplied for the same position with ABF in January 1979. Any possible misrepresentation would have to involve the congenital abnormality first diagnosed by Dr. Schultz in 1977, one month before Tallman filled out the employment application, because Tallman did not learn of the disk protrusion until 1986.

To bar recovery of workers' compensation benefits on the grounds of a falsified employment application, three essential factors must be present: (1) the employee must have willfully and knowingly misrepresented his physical condition; (2) the employer must have relied on the misrepresentation and such reliance must have been a substantial factor in the hiring; and (3) there must have been a causal connection between the misrepresentation and the injury. *Martinez v. Driver Mechenbier, Inc.,* 90 N.M. 282, 562 P.2d 843 (Ct.App. 1977). Although ABF points to statements and omissions by Tallman which it alleges amount to misrepresentations, Tallman denied willfully or knowingly misrepresenting his employment application. Determination of whether a person has acted knowingly or willfully is an issue of fact, rarely susceptible of proof by direct evidence. *See United Nuclear Corp. v. General Atomic Co.,* 93 N.M. 105, 597 P.2d 290 (1979); *see also State v. Frank,* 92 N.M. 456, 589 P.2d 1047 (1979).

■ The causal connection between an employee's misrepresentation as to his

---

1. This section is applicable to claims for injuries occurring on or after May 21, 1986, until July 1, 1987, pursuant to enacting legislation at 1986 N.M.Laws, ch. 22, §§ 101 & 105, and subsequent legislation repealing the section at 1987 N.M. Laws, ch. 235, §§ 12 & 54A. *See* compiler's notes to NMSA 1978, § 52–1–26 (Cum.Supp. 1986 & Repl.Pamp.1987). The accidental injury here occurred within that time frame, September 5, 1986.

physical condition and the injury for which he claims worker's compensation benefits must be established by expert medical testimony before such misrepresentation will bar the employee from recovery of benefits. *Chavez v. Lectrosonics, Inc.*, 93 N.M. 495, 601 P.2d 728 (Ct.App.1979). We find no substantial evidence to show a causal connection between a misrepresentation, if any, and Tallman's compensable injury. Both Drs. Feil and Schultz agreed Tallman's congenital vertebrae abnormality and bulging disk are separate and distinct conditions. WCD found these injuries to be separate and distinct. Tallman's claim for compensation is based only on the bulging disk injury. Therefore, there being no causal connection between a possible misrepresentation of Tallman's congenital abnormality and his bulging disk, the compensable injury, the hearing officer correctly found that Tallman did not willfully and knowingly misrepresent his physical condition when he applied for employment with either Navajo Freight Lines or ABF.

## WHETHER TALLMAN WILLFULLY SUFFERED THE SPECIFIC INJURY FOR WHICH HE MAKES CLAIM

 NMSA 1978, Section 52-1-11 (Repl.Pamp.1987) provides: "No compensation shall become due or payable from any employer under the terms hereof in event such injury was occasioned by the intoxication of such workman, or wilfully suffered by him, or intentionally inflicted by himself." ABF claims Tallman should be denied benefits because he willfully suffered his injury. The employer relies on evidence that Dr. Schultz advised Tallman against heavy work as required in his employment.

As with the prior discussion, ABF continues to regard the congenital abnormality and the disk protrusion as one. They are not. Tallman did not learn of the bulging disk until September 5, 1986. He quit work after learning of that defect.

We cannot say WCD erred in failing to find that Tallman willfully suffered the disk protrusion at L4–5 when he did not know he had the problem. Moreover, Dr. Schultz never informed Tallman he might develop another completely separate and distinct back problem that could aggravate the congenital defect.

Willful misconduct requires that the worker have knowledge of the peril and the ability to foresee the injury for which willful misconduct is to blame. *Christensen v. Dysart*, 42 N.M. 107, 76 P.2d 1 (1938). Such is missing here, so WCD did not err in failing to find willful suffering of an injury.

## ATTORNEY FEES

 After briefing but before a decision had been rendered in this appeal, counsel for Tallman filed a motion with this court for remand, alleging error in WCD's award of attorney fees under NMSA 1978, Section 52-1-54 (Cum.Supp.1986) rather than Section 52-1-54 (Orig.Pamp.). Tallman was originally granted an extension of time by this court in which to file a cross-appeal regarding the issue of attorney fees; however, he neglected to file a docketing statement and, therefore his cross-appeal was deemed abandoned. *See State v. Talley*, 103 N.M. 33, 702 P.2d 353 (Ct.App. 1985); SCRA 1986, 12-208(D). Because we determine the award of attorney fees by WCD in the proceedings below was not jurisdictional in nature, and Tallman neglected to follow through on the appeal process regarding that issue, we deny the motion for remand and let stand the original award of attorney fees.

Tallman contends the award of attorney fees under the wrong statute makes such award error for lack of jurisdiction. We disagree. Tallman relies on *Heckathorn v. Heckathorn*, 77 N.M. 369, 423 P.2d 410 (1967), for the proposition that the jurisdictional essentials necessary to the validity of every judgment are jurisdiction of parties, jurisdiction of subject matter, and the power or authority to decide a particular matter presented. Aside from that correct proposition, Tallman's reliance on *Heckathorn*, and likewise on *Sims v. Mechem*, 72 N.M. 186, 382 P.2d 183 (1963), is misplaced. Both cases dealt with the issue of whether the court had the jurisdiction to decide the initial issue involved. The test of the jurisdiction of a court is whether it had the authority to enter upon the inquiry, not whether its conclusion in the course of it was right or wrong. *State v. Patten*, 41

**134**

N.M. 395, 69 P.2d 931 (1937). In the case at hand, both statutes gave to WCD the authority to award attorney fees. *See* § 52–1–54 (Orig.Pamp. & Cum.Supp.1986).

Furthermore, *State v. McNeece*, 82 N.M. 345, 481 P.2d 707 (Ct.App.1971), which holds that the reliance on an inapplicable statute is a question of jurisdiction and, therefore, voids any judgment based on such use, is distinguishable from the present case. The *McNeece* case was criminal in nature as compared to the civil case at hand. In criminal cases, it has been held that the trial court may lose its jurisdiction when certain constitutional guarantees are denied, overlooked or omitted. *See State v. Buchanan*, 78 N.M. 588, 435 P.2d 207 (1967); *Orosco v. Cox*, 75 N.M. 431, 405 P.2d 668 (1965). Thus, because of the possibility of jeopardizing an individual's rights in criminal cases, the court must be careful to assure itself it has jurisdiction. In the case before us, at issue is the matter of attorney fees as compared to *McNeece* where an individual's freedom from wrongful conviction was ultimately at stake. WCD's possible error in awarding the attorney fees under the wrong statute does not make the award error for lack of jurisdiction. For the above-stated reasons, the motion is denied.

CONCLUSION

We therefore affirm the decision of the hearing officer for the above-stated reasons. Fair and reasonable attorney fees in the amount of $2,500, plus applicable gross receipts tax, are awarded to Tallman for this appeal. § 52–1–54 (Repl.Pamp.1987). Because the affirmed compensation order provides for the earning of all interest due, this court need not address the request for such by Tallman's counsel. We wish to express our appreciation to amici curiae for their assistance.

IT IS SO ORDERED.

DONNELLY, C.J., and APODACA, J., concur.