IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-022

Filing Date:  December 21, 2009

Docket No. 29,133

JUDY CHAVEZ,

      Worker-Appellee,

v.

CITY OF ALBUQUERQUE and
RISK MANAGEMENT DIVISION,

      Employer/Insurer-Appellants.

APPEAL FROM WORKERS' COMPENSATION ADMINISTRATION
Victor S. Lopez, Workers' Compensation Judge

Bogardus & Scott, P.C.
Robert L. Scott
Albuquerque, NM

for Appellee

Butt Thornton & Baehr, P.C.
Emily A. Franke
Carlos G. Martinez
Albuquerque, NM

for Appellant City of Albuquerque

## OPINION

**SUTIN, Judge.**

{1}    The City of Albuquerque (Employer) appeals from the Workers' Compensation Judge's (WCJ's) decision favoring Judy Chavez's (Worker's) choice of a health care provider over Employer's objection.  We reverse.

**BACKGROUND**

**{2}** After Worker's injury in February 2005, Employer made the initial choice of a provider and sent Worker to Employer's Employee Health Center where Worker was seen by a physician's assistant, by Dr. William Wellborn, and by an occupational therapist. In April 2006, Worker made her own selection of a health care provider, which was Dr. Ernesto Garza. While under Dr. Garza's care, Worker also saw her primary care doctor, and also saw Drs. Atler, Gutierrez, Tiernan (Dr. Garza's partner), and Whalen, as well as other doctors for varying medical problems. At some point, Worker appears to have requested that her care be changed from Dr. Garza to Dr. Whalen. According to Employer, Worker switched from Dr. Garza to Dr. Whalen. Employer did not object to Worker seeing any doctor Worker had seen.

**{3}** Dr. Garza died in 2007 and Worker was referred by her attorney or otherwise chose to see Dr. John Henry Sloan. Employer did not object to this selection. No formal filing was made with the Workers' Compensation Administration (WCA) in connection with the change to Dr. Sloan. The change to Dr. Sloan was done with the cooperation of an adjuster and thus by agreement. Some seventeen months later, in November 2008, Worker notified Employer that she wanted to change her provider to Dr. Carlos Esparza. Employer did not agree, and on November 12, 2008, Worker filed a request to change provider with the WCA. That request, signed only by Worker's legal counsel, explained that Dr. Sloan's medical care was inadequate and unreasonable. On November 12, 2008, the WCJ scheduled Worker's request and Employer's objection for a thirty-minute hearing on November 19, 2008. After service and entry of appearance, Employer formally objected on November 20, 2008.

**{4}** On November 20, 2008, the WCJ reset the hearing to occur on November 21, 2008, and again allotted thirty minutes for the hearing. During the hearing on that date, the WCJ advised the parties on three occasions that time was limited. The WCJ ended the hearing at approximately the thirty-minute scheduled time. No one testified at the hearing. The only evidence offered and admitted consisted of three exhibits offered by Employer, which were a history and physical by Dr. Garza, a progress note by Dr. Garza, and a history and physical by Dr. Sloan. After listening to counsel, and close to the thirty-minute hearing deadline, the WCJ stated that he did not have time to take testimony, and he asked the parties if they wanted an evidentiary hearing scheduled, but neither party requested a further hearing. Worker's counsel made an offer of proof, stating that Worker would testify that the treatment she was getting from Dr. Sloan was not proper and that the doctor was not addressing what she perceived to be her needs, while at the same time stating that he had no expert testimony saying that Dr. Sloan's care was unreasonable. Worker's counsel further stated that what the parties had was a case that needed closure. Employer's counsel stated that Employer could not add anything given the time allotted for the hearing.

**{5}** At the hearing's end, Worker's counsel explained that Worker was in control of her health care, and just as a doctor can refer a patient to another doctor, Worker's choice of a provider was simply a continuation of Worker's right to control her care. This drew a response from Employer's counsel that control did not, as explained in *Chavez v. Intel Corporation*, 1998-NMCA-175, 126 N.M. 335, 968 P.2d 1198, allow a worker who makes the last choice and pick of a provider to

thereafter keep on choosing and picking providers. The WCJ took the matter under advisement and later entered an order with several findings of fact. Among the findings were the following:

6. No party invoked the jurisdiction of the [WCA] to resolve [the] status of Worker's right of second selection after Dr. Garza's demise; Dr. John Henry Sloan's care was not a referral from Dr. Garza.

7. The parties essentially "agreed"—whether explicitly or implicitly, by filing an objection thereto—that Worker could be seen by various doctors, including Dr. Sloan, Dr. Tiernan, and others; however, no formal written agreement was submitted into evidence characterizing any such doctor as a permanent replacement.

8. Worker claims that Dr. Sloan is not providing adequate medical care to her because he is disorganized and unfocused in his treatment; also Dr. Sloan has his physician's assistant or other inexperienced doctors in his office see Worker, but Dr. Sloan no long[er] sees . . . Worker.

9. Worker claims that, despite returning to work, she continues to have debilitating and almost continuous pain that is wearing her down.

10. Without addressing the merits of Worker's claims against Dr. Sloan, in light of Dr. Garza's death, the parties' inability to continue to agree on a proper choice of health care provider, a decision must be made regarding Worker's second selection rights.

11. A party exercising the right of second selection cannot continue to change doctors at will, and so . . . Worker in [t]his case would normally be bound by [her] choice of Dr. Garza.

12. However, because Dr. Garza has passed, and clearly he cannot continue to provide reasonable care, Worker should be allowed some relief, especially where the parties' interim agreements for medical care have reached an impasse.

13. Worker is hereby allowed to make a formal, second selection of a treating physician to take over Dr. Garza's care, pursuant to [NMSA 1978,] Section 52-1-49 [(1990).]

{6}     Employer appeals, contending that, having selected Dr. Garza as a second selection and, upon Dr. Garza's death, having selected Dr. Sloan, Worker was not permitted under Section 52-1-49 to select Dr. Esparza to replace Dr. Sloan absent required proof that Dr. Sloan's care was unreasonable.

3

## DISCUSSION

### A.     Selection of Providers Under Section 52-1-49

{7}     Upon notice of an accident, an employer must provide the injured worker reasonable and necessary health care services from a provider in a timely manner. Section 52-1-49(A). The employer may initially select the provider or may allow the worker to do so. Section 52-1-49(B). After the initial sixty-day period, the party who did not make the initial selection may select a provider. Section 52-1-49(C). Unless the employer and the worker otherwise agree, the party making this second selection of a provider is to give notice of the selection to the other party. *Id*. The party making this second selection does not have to show that the first provider's care was unreasonable, *Chavez*, 1998-NMCA-175, ¶ 6, although the other party can file an objection to the second selection. Section 52-1-49(D); *see Chavez*, 1998-NMCA-175, ¶ 7 (stating that "the party making the second selection has unfettered discretion to choose a new physician," leaving the burden on the other party to establish that the care of the provider selected second will be unreasonable). In the present case, as indicated earlier in this opinion, Employer made the initial selection, Worker made the second selection, and Employer did not object to the second selection, who was Dr. Garza. Nor, when Dr. Garza died, did Employer object to Worker's choice of a replacement, who was Dr. Sloan.

{8}     If the worker or the employer disagrees with the choice of a provider by the other party at any time and they cannot agree otherwise, the party requesting the change in provider is to submit a request for a change of provider to a WCJ. Section 52-1-49(E). That request must contain the reasons for the request, and the person making the request has the burden of proving to the WCJ that the care being received is not reasonable. Section 52-1-49(F). The WCJ is required to render a decision within seven days of the request. *Id*. In the present case, Employer disagreed with Worker's selection of Dr. Esparza to replace Dr. Sloan, and Worker filed a formal request with a WCJ to allow a change to Dr. Esparza. It was this request that the WCJ entertained. Worker presented no testimony or documentary evidence. Although given the opportunity to have an evidentiary hearing scheduled, Worker did not request an evidentiary hearing. Her counsel indicated only that she would testify that Dr. Sloan's care was inadequate and did not meet her needs as she perceived them. In Employer's view, Worker had had sufficient medical care. The WCJ decided the issues in Worker's favor.

### B.     The Selection Issue

{9}     The WCJ did not decide this case based on the merits of whether Worker could change to Dr. Esparza because Dr. Sloan's care was not reasonable. The question on appeal is whether Worker was entitled under Section 52-1-49(E) and (F) to change her provider to Dr. Esparza despite lack of any evidence showing that Dr. Sloan's care was not reasonable. This Court reviews workers' compensation orders using the whole record standard of review. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 126, 767 P.2d 363, 365 (Ct. App. 1988), *modified on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148. Whole record review contemplates a canvass by the reviewing court of "all the evidence bearing on a

4

finding or decision, favorable and unfavorable, in order to determine if there is substantial evidence to support the result," and the appellate court is to "decide[] whether there is evidence for a reasonable mind to accept as adequate to support the conclusion reached." *Id.* at 128, 767 P.2d at 367. This Court reviews the WCJ's application of the law to the facts de novo. *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320.

**{10}** Employer takes issue with certain findings of the WCJ. First, as an aside, Employer states that the WCJ made a series of findings despite the absence of any evidence other than Employer's three exhibits. In regard to certain findings, Employer argues that nothing in Section 52-1-49 requires WCA jurisdiction to be formally invoked by filing a document where the employer does not object to a provider. Employer attacks the WCJ's finding that Dr. Esparza was a replacement for Dr. Garza, rather than a third selection, because this determination ignored the evidence that Dr. Sloan in fact replaced Dr. Garza when Worker chose Dr. Sloan and that Dr. Sloan treated Worker for over a year after Dr. Garza's death. Employer contends that Dr. Esparza was not a "second selection," but was, rather, a third selection, requiring Worker to prove that Dr. Sloan's care was unreasonable, a burden Worker failed to sustain.

**{11}** Employer relies on *Chavez* as authority to support its arguments. Similar to the present case, in *Chavez* the employer made the initial selection and the worker made the second selection. 1998-NMCA-175, ¶ 2. A year or so later, the worker began seeing another doctor, apparently with the acquiescence of the employer. *Id.* Almost a year after that, the worker gave notice to the employer that she was changing to yet another health care provider. *Id.* The employer objected, and in a hearing on the issue the workers' compensation judge determined that the employer had not presented any evidence establishing that the new selection would be unreasonable. *Id.* ¶ 3.

**{12}** In *Chavez*, this Court held that the workers' compensation judge erred in determining that the worker had an unlimited right to change to the last provider absent a showing by the worker of unreasonableness in current care. *Id.* ¶ 10. We explained that the worker's discretion in selecting the second provider was unrestricted and that the employer did not challenge that second selection or the change a year later from that second selection to a new provider. *Id.* ¶ 9. It was the worker's next, newly desired selection that created the issue, and as to that we indicated that after the initial and second selections, under Section 52-1-49(F), "any further change in physicians places the burden of proving that the present physician's care is unreasonable upon the party seeking to change physicians." *Chavez*, 1998-NMCA-175, ¶ 9. We held that the workers' compensation judge erred in placing the burden of proof on the employer, and the worker could not prevail because she failed to sustain her burden of proof. *Id.* ¶ 10.

**{13}** We are unable to discern the significance of the WCJ's findings relating to formal requirements, as expressed in findings 6 and 7, which discuss invocation of WCA jurisdiction and the lack of a written agreement characterizing any doctor as a permanent replacement. The WCJ's findings and order do not contain any references to any statutory or other legal requirements in regard to such formalities. Nor do the findings and order explain how the failure to adhere to any particular formality supported a determination in Worker's favor. Worker says nothing on the subjects in her brief. Also making it difficult for us to understand the legal basis for the WCJ's

5

determination in favor of Worker is the absence in the findings and order of any legal or policy rationale for the finding that Worker's selection of Dr. Esparza constituted a second selection under the Section 52-1-49. The WCJ states merely that the selection of Dr. Esparza was Worker's second selection, and that because Dr. Garza was no longer able to provide reasonable care "Worker should be allowed some relief, especially where the parties' interim agreements for medical care have reached an impasse."

{14}    We do not see how the WCJ's findings rationally or logically tie in to how the WCJ arrived at the conclusion that the selection of Dr. Esparza was Worker's second selection.  Nor do we see how the findings support the WCJ's ultimate decision in Worker's favor.  After Dr. Garza's passing, the parties agreed that Dr. Sloan would continue with Worker's care as her provider.  The only impasse in this case occurred when Worker wanted to change from Dr. Sloan to Dr. Esparza. That impasse was resolvable through adjudication by the WCJ.  Worker did not present evidence that Dr. Sloan's care was unreasonable, and on appeal Worker does not argue that her offer of proof was a sufficient substitute for testimony, nor does she argue that the WCJ unreasonably deprived her of an opportunity to present evidence.

{15}    Worker attempts to support the WCJ's ultimate determination in her favor by characterizing the main issue in the appeal as "whether a WCJ will be given the discretion needed to effectively decide [health care] provider . . . issues" and by arguing that the WCJ's exercise of discretion in health care decisions such as the one in this case should be left untouched by appellate courts. Worker devotes one page of a total two-page argument to her contention that this Court should give virtually complete deference to the discretion of the WCJ.  Worker's rationale is that "an injured worker cannot wait for an appellate court to decide [a provider] issue because most medical decisions . . . need to be decided quickly" and that deferring to the WCJ's decision "is the best way to quickly decide these issues."  She argues that the WCJ as decision-maker is closest to the case and "almost always has the best perspective on the case."  Therefore, according to Worker, "decisions regarding an injured worker's [health care] should remain in the discretion of the WCJ." Worker points to different scenarios in which an injured worker may need a new doctor or in which a new doctor might otherwise be appropriate and argues that those instances show why the WCJ's discretion should prevail.  Worker states that protection of this discretion is critical and that "[i]t makes little sense for the Court of Appeals or the Supreme Court to review each and every decision a WCJ makes regarding [health care], especially when, in most cases, it will stall the injured worker's medical treatment for a year or more."

{16}    Worker devotes the second of her two-page argument to an argument that *Chavez* does not, as applied to the facts that occurred after Dr. Garza's death, require application of Section 52-1-49 and reversal.  She attempts to distinguish *Chavez* arguing that, unlike the present case, in *Chavez* "the current authorized [provider] had not died and the parties had not informally agreed on another interim doctor to take over the worker's care" and that "the worker was arguing for unrestricted power to choose her doctors."  She argues that she "is not asking for unfettered control over choosing her doctors."  That Worker's attempt to distinguish *Chavez* on its facts bears no fruit seems all but conceded by Worker in her answer brief where, in concluding her argument on *Chavez*, she reverts to her primary argument that the WCJ is to be affirmed based on the view that this Court

6

should "recognize and protect a WCJ's discretion to resolve most [provider] disputes between the parties because a WCJ is, in most cases, the person best positioned to decide those cases."

{17}   We are not persuaded by Worker's arguments.  She does not argue how the WCJ's findings or the law support the ultimate determination in her favor.  She in effect argues for no appellate review of decisions by workers' compensation judges on health care provider issues.  She impliedly advocates for an abuse-of-discretion standard of review.  Worker appears to recognize that the WCJ's determination could be problematic.  At the outset of her answer brief, under her "summary of facts," she states that "[r]emand to the WCJ for an evidentiary hearing would probably be appropriate in this case if the Court is unwilling to affirm."  On whole record review, we hold that Worker's selection of Dr. Garza was not her second selection, that she was required to prove that the care of her current provider, Dr. Sloan, was unreasonable, and she did not sustain that burden.

{18}   We understand that there will be circumstances in which a worker feels it necessary to change providers after the initial and second selections of providers have occurred.  There is no question that the Workers' Compensation Act is to "be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured . . . workers."  NMSA 1978, § 52-5-1 (1990).  However, Worker has not shown why she could not obtain an evidentiary hearing and present testimony of unreasonable current care and do so within a short time frame.  She in no way faults the WCJ in regard to scheduling.  To the extent that the need to change providers is legitimate but inadequately addressed in the workers' compensation statutes, we suggest that the matter should be addressed by the Legislature.  Similarly, Worker's concern about heath care relief getting bogged down because the appellate process is available to an employer is not a matter this Court can resolve.  Further, if this Court's standard of review on the issue at hand should be changed to one of abuse of discretion, that change must come from our Supreme Court.  In the meantime, our standard of review is full record review as discussed in *Tallman* combined with de novo review to the extent we are required to construe workers' compensation-related statutes.

**CONCLUSION**

{19}   We reverse the decision of the WCJ.

{20}   **IT IS SO ORDERED.**

_____
                                        **JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for** *Chavez v. City of Albuquerque***, No. 29,133**

**WC**                **WORKERS COMPENSATION**
WC-MT          Medical Treatment
WC-WG         Workers' Compensation, General