This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**KATHY THAMES**,

     Worker-Appellant,

v.                               **NO. 29,062**

**GRACE REQUIRES UNDERSTANDING, INC.**
**and THE HARTFORD INSURANCE CO.**,

     Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Terry Kramer, Workers' Compensation Judge**

Patrick L. Fogel, LLC
Patrick Larkin Fogel
Albuquerque, NM

for Appellant

Law Offices of Eva K. Rappaport
Ned S. Fuller
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**ROBLES, Judge.**

Kathy Thames (Worker) appeals a determination by the Workers' Compensation Judge (WCJ), denying her workers' compensation benefits. On appeal, Worker argues that (1) the WCJ erred in concluding that she knew or should have known she had sustained a compensable injury in August 2006; (2) failure to have the required reporting forms with the posted Workers' Compensation notice (posted notice) under NMSA 1978, Section 52-1-29(B) and (C) (1990) changes the fifteen-day notice period to sixty days; (3) substantial evidence does not support the WCJ's finding that she knew or should have known she had a compensable injury prior to the time she was first informed by her healthcare provider that her carpal tunnel syndrome was work-related; and (4) the WCJ erred when he concluded that Worker's belief that her sleep posture was the cause of her condition was unreasonable. We affirm.

**I.    BACKGROUND**

In July 2005, Worker began employment with Grace Requires Understanding, Inc. (Employer) as an administrative assistant. Her duties required her to stuff envelopes, perform administrative functions, spend time on the computer, and file. In May 2006, she first noticed pain in her arms. In August 2006, she took off work for one week due to the pain she was experiencing in her arms. Finally, in December

2006, she sought medical help. After several referrals, she was diagnosed with carpal tunnel syndrome. On February 8, 2007, she underwent surgery on her left arm and, on February 21, she had surgery on her right arm. Worker testified that it was not until February 2007 when her uncle first suggested her injury may be work-related, did she associate her injury with her job. The parties agree that she was first informed by her healthcare provider that the injury was work-related in late February or early March. The WCJ found that the earliest point at which Worker gave notice to Employer that the injury was work-related was on March 19, 2007.

## II. DISCUSSION

We conclude that the WCJ did not err in finding that Worker knew or should have known that she had a compensable injury in August 2006. This precludes us from addressing Worker's second argument of whether a failure to have the required reporting forms with the posted notice extends the notice period. We address together Worker's arguments that (1) there was no substantial evidence to support the WCJ's finding that she knew or should have known she had a compensable injury before being informed by her healthcare provider, and (2) the WCJ erred in concluding it was unreasonable for her to believe that her sleep posture was the cause of her condition.

### A. Timing of the Injury

For the purpose of reviewing agency decisions, the substantial evidence standard is modified to include the whole record review. A reviewing court contemplates a canvass of all evidence bearing on a decision both favorable and unfavorable to the decision reached to determine if there is substantial evidence to support the decision reached. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 128, 767 P.2d 363, 367 (1988). "To conclude that an administrative decision is supported by substantial evidence in the whole record, the court must be satisfied that the evidence demonstrates the reasonableness of the decision." *Martinez v. Darby Constr. Co.*, 109 N.M. 146, 148, 782 P.2d 904, 906 (1989) (internal quotation marks and citation omitted). We do not reweigh evidence in applying the whole record standard of review, nor do we substitute our judgment for that of the judge or contemplate whether a contrary finding could be supported by the evidence. *See Flint v. Town of Bernalillo*, 118 N.M. 65, 67, 878 P.2d 1014, 1016 (Ct. App. 1994). We remain conscientious "of the essential fact-finding role of administrative agencies and the deference accorded them because of their knowledge and expertise. *Tallman*, 108 N.M. at 130, 767 P.2d at 369. Under whole record review, this Court will view the evidence in the light most favorable to the agency decision. *Id*. at 128, 767 P.2d at 367.

As an initial matter, we note that, in cases involving latent and progressive injuries, it is difficult to set a date certain for the occurrence of an accident. Likewise, in other cases, the occurrence of an event or accident may be known, but the effects of such a happening may not materialize and cause interference with a worker's duties until some time in the future. In *Brown v. Safeway Stores, Inc.*, this Court acknowledged that the rule in latent injury cases is that "the workman must give notice but only after he knew, or should have known by the exercise of reasonable diligence, that he had incurred a compensable injury by accident arising out of and in the course of his employment." 82 N.M. 424, 426, 483 P.2d 305, 307 (Ct. App. 1970); *Flint*, 118 N.M. at 67, 878 P.2d at 1016 ("Our Supreme Court has stated that the time period in which notice of a claim must be given begins when the worker recognizes or should recognize the nature, seriousness, and probable compensable character of the injury." (internal quotation marks and citation omitted)). In such cases, the initial question for a WCJ is: When would a person of reasonable diligence have first known or should have known that they suffered a work-related accident? "[T]his recognition may become apparent to a worker only after loss of the capability to perform regular duties, notwithstanding the fact that some time has elapsed from the date of the original incident during which the worker was able to perform usual tasks while experiencing pain." *Gomez v. B.E. Harvey Gin Corp.*, 110 N.M. 100, 102,

792 P.2d 1143, 1145 (1990). The date that a worker is imputed with the knowledge of a work-related, compensable injury begins the running of the notice clock governed by Section 52-1-29. *See Garnsey v. Concrete Inc.*, 1996-NMCA-081, ¶ 12, 122 N.M. 195, 922 P.2d 577.

In the instant case, the WCJ made the following relevant findings of fact:

9. Worker took a week off work due to the increased pain in August of 2006.

10. The pain Worker was experiencing diminished while she was off work.

. . . .

23. Worker suffered a work[-]related accident in August of 2006 when she was forced to take a week off work due to her symptoms of pain and numbness.

. . . .

25. The earliest Worker gave notice to Employer was March 19, 2007.

. . . .

28. Worker knew as early as May of 2006 that work activities aggravated her symptoms.

29. Worker knew that her symptoms were so severe that she took a week off work in August of 2006.

. . . .

32. It is unreasonable to believe that Worker had pain and numbness in her hands and wrists in May 2006, noticed the pain while performing work activities, noticed that work activities aggravated the pain and numbness, noticed the pain in her hands and wrists worsened when she typed, noticed that the pain diminished when she took a week off work, underwent two carpal tunnel surgeries in February of 2007[,] but did not relate her pain or bilateral carpal tunnel to work until told by either her uncle or the physician's assistant in late February or March, 2007.

33. Oral notice provided to Employer on March 19, 2007 was not timely.

34. Written notice provided to Employer on March 28, 2007 was not timely.

Additionally, the WCJ made the following conclusions of law:

3. The earliest that Worker provided notice of a work accident to ... Employer was March 19, 2007.
4. Worker did not provide timely notice of a work accident to Employer pursuant to [Section] 52-1-29.

Supplemental findings of fact were made in this case pursuant to this Court's Order of Limited Remand for the purpose of clarifying the original findings of fact and conclusions of law. The supplemental findings state:

1. In May 2006, Worker began having complaints related to bilateral carpal tunnel syndrome.
2. Worker knew that work activities aggravated her symptoms and pain.
3. It was apparent by August, 2006, when Worker took a week off of work due to her physical symptoms, that Worker's injury arose out of her employment.
4. Worker knew or should have known that she suffered from a work-related injury at the time she took a week off of work in August of 2006 due to increased pain brought about by her work activities.

The supplemental conclusions of law state:

1. Worker knew or should have known that she suffered a work-related accident in August of 2006.
2. Worker failed to give timely notice of her work-related accident.
3. Worker is not entitled to workers' compensation benefits for her bilateral carpal tunnel condition.

7

In reviewing the WCJ's findings of fact and conclusions of law, we are cognizant that an appellate court is not bound by labels from below that a particular determination is a conclusion of law or a finding of fact. *See Tallman*, 108 N.M. at 130, 767 P.2d at 369. What is clear from the above compensation orders is that the WCJ thought it was unreasonable that Worker did not relate the carpal tunnel syndrome to her work duties until after her surgery and, when she took a week off of work in August 2006, she either knew or should have known that she had suffered an injury.

On appeal, Worker argues that the WCJ erred in concluding that Worker knew or should have known she suffered an injury in August 2006 because Worker's time off was a "pre-approved paid vacation," which she took to coincide with her son's birthday. In her brief, Worker argues that "[t]here is no evidence in the record proper that [she] knew that her injury was related to work until she was told so by [her] physician assistant . . . on March 16, 2007." We disagree for the following two reasons.

On cross-examination, the following interactions occurred:

[QUESTION]:     And, then in August, [the pain] got so bad that you
                actually took a week off of work, correct?

[WORKER]:       Yes, sir.

8

[QUESTION]:   And, in fact, you noticed that the pain was aggravated a lot at work?

[WORKER]:   Yes, sir.

. . . .

[QUESTION]:   And, your testimony is that you noticed the pain a lot at work, correct?

[WORKER]:   Yes, sir.

. . . .

[QUESTION]:   Ok.  Well you noticed that the pain got worse when you typed as well, right?

[WORKER]:   Yes.

[QUESTION]:   In fact, you said you were typing on the computer almost all the time.

[WORKER]:   Yes.

[QUESTION]:   And you noticed your elbows hurt when you picked up the phone, right?

[WORKER]:   Yes.

[QUESTION]:   OK.  And you noticed that after you took time off of work, the pain diminished.

[WORKER]:   During the day, but not at night.

[QUESTION]:   But, you still had no clue what was causing or aggravating your pain, is that your testimony?

[WORKER]:   No, sir.  I didn't correlate the two.

Some time later, on recross-examination, Worker stated for the first time that she did not work in August because of her son's birthday.

[QUESTION]: Ma'am, the first time you took time off of work because of the pain, or the problems you were having in your hands and wrists, was in August of [20]06, correct?

[WORKER]: Yes, sir.

[QUESTION]: It wasn't the surgeries.

[WORKER]: Ok.

[QUESTION]: Is that correct?

[WORKER]: Ok. I also took off in August because it was my son's birthday, and I kinda made it around that time.

[QUESTION]: Let's go to page 22 of your deposition starting at line 24. "Right. When you -- you mentioned that you would take some time off. When was the first time you had to take time off because of the problems with your hands and wrists? Answer: "I know I took some time -- a week off in -- like a week off in August. But prior to that, I don't remember. I know there was days that I did miss off and on. But as far as to actually say that it hurt so bad, I would say in August."

[WORKER]: That's what I said. Yes, sir.

[QUESTION]: And, then I asked the question: "When you took that time off in August, did you notice that the pain and the numbness diminished?" Answer: "A little bit. Yes, sir." Correct?

[WORKER]: During the day.  Yes, sir.

[QUESTION]: And, so you still, at that time, you didn't make the connection that this was a work-related, at least, work was causing part of your pain and your numbness?

[WORKER]: No, sir.  I didn't correlate it.

The WCJ heard all the testimony and held that "Worker knew or should have known that she suffered from a work-related injury at the time she took a week off of work in August of 2006 due to increased pain brought about by her work activities." In light of all the testimony, the WCJ concluded that it was unreasonable to assume that Worker was unaware of a compensable injury in August 2006 when she took time off work.  Although Worker did allege at the end of her testimony that she also took time off because of her son's birthday, implying that the respite was a planned event, the question of whether Worker took time off because of pain or because of a birthday or because of pain *and* a birthday is a question of fact, goes to weight, and turns on credibility.  This Court does not observe the demeanor of witnesses and cannot observe inflections and expressions that are often critical when weighing the credibility of a live witness. *Tallman*, 108 N.M. at 127, 767 P.2d at 366.

Section 52-1-29 speaks specifically to when a worker knows *or should have known* of a work-related injury and does not require "evidence in the record proper that [W]orker knew that her injury was related to work."  The court in

11

*Garnsey* addressed the issue of when a worker is required to give notice to the employer of a latent injury. *Garnsey* held that the time to give notice for a latent injury begins when a worker knows or should have known of the compensable injury. 1996-NMCA-081, ¶¶ 16, 18. In that case, the claimant had pinched a nerve in his neck while opening the hood of a truck within the course of his employment. *Id*. ¶¶ 2, 4. Although his immediate neck pain quickly dissipated, within the next several days, he began feeling pain in his arms, shoulder, and hand. *Id*. ¶¶ 2, 3. He testified that he did not associate the pain in his arms and shoulder with the hood incident before he was diagnosed with a pinched nerve. *Id*. The WCJ concluded that after being diagnosed and becoming aware that his pain was work-related, the claimant did give notice to his employer within the applicable notice period and granted him benefits for his work-related injury. *Id*. ¶ 1. This Court affirmed, noting that notice of latent injuries should be within the statutory time period of when the worker knew or should have known with the exercise of reasonable diligence of a compensable injury. *Id*. ¶ 18. However, no medical diagnosis need be in the record for it to be said that a worker using reasonable diligence would discover that an injury was work-related and compensable. A worker *may* be imputed with this knowledge when he becomes incapable of performing his regular duties, "notwithstanding the fact that some time has elapsed from the date of the original incident during which the worker

was able to perform usual tasks while experiencing pain." *Gomez*, 110 N.M. at 102, 792 P.2d at 1145.

Although consideration of Worker's time off as a planned vacation could lead to a contrary finding, the existence of evidence that may support a contrary finding is not the focus of our review, but rather whether the determination by the agency below was reasonable in light of the whole record. *Tallman*, 108 N.M. at 128, 767 P.2d at 367. On balance, this Court cannot say that the WCJ's determination in this case was unreasonable when considering the record before us. Because we hold that evidence supports the reasonableness of the conclusion by the WCJ that Worker either knew or should have known she suffered a work-related injury, we affirm the August 2006 date.

**B.    Notice**

Our cases have previously held that providing notice to an employer is a condition precedent to the right of a worker to receive compensation for a work-related accident. *Garnsey*, 1996-NMCA-081, ¶ 9. Worker alleges that a failure to have the required reporting forms with the posted notice allows for an extended reporting period. Specifically, Worker argues that the provision in Section 52-1-29(B) that tolls the time a worker has to give notice from fifteen days up to sixty days, when an employer does not have a conspicuously-placed notice advising workers of the

need to notify employers in writing of an accident, also applies to Section 52-1-29(C) when the posted notice does not have preprinted forms attached. Worker claims that the WCJ erred in not addressing her argument that Employer's failure to have reporting forms extends the notice period. However, by holding that Worker knew or should have known of her compensable injury in August 2006, and Worker provided notice in March, the WCJ's decision rendered Worker's statutory argument merely academic and moot. Because of our affirmance of the August 2006 date, an extension of the notice period from fifteen to sixty days would not make Worker's March notice date timely. We therefore decline to reach the question of whether failure to have preprinted forms attached to the posted notice will toll the notice period under Section 52-1-29.

**C.     Substantial Evidence**

We now address Worker's arguments that (1) there was no substantial evidence to support the WCJ's finding that she knew or should have known she had a compensable injury before being told by her healthcare provider, and (2) the WCJ erred in concluding that it was unreasonable for her to believe that her sleep posture was the cause of her condition. Both of these arguments essentially question whether the evidence presented is sufficient to uphold the WCJ's conclusion that Worker knew

14

or should have known she had a work-related injury in August 2006. We answer this question in the affirmative.

Worker asserts that she should not be expected to display a greater diagnostic skill than any other uninformed layperson confronted with similar symptoms. She states that she "did not have conclusive knowledge that her bilateral carpal tunnel syndrome was work[-]related until" she was told by her healthcare provider. Worker cites to *Flint* for the proposition that a worker "should be expected to display no greater diagnostic skill than any other uninformed layperson confronted with the early symptoms of a progressive condition." *Id.* at 68, 878 P.2d at 1017 (internal quotation marks and citation omitted). *Flint* concerned post-traumatic stress disorder (PTSD). In that case, we agreed with the claimant that substantial evidence did not support the conclusion that the claimant knew or should have known he had a compensable injury prior to the time he was first diagnosed with PTSD. *Id.* at 68, 878 P.2d at 1017. The immediate case is factually distinct. Here, Worker was not experiencing problems due to an incident nearly six years earlier as was the case in *Flint*, but instead was experiencing symptoms while at work and after she went home in the evening. *Id.* In this case, the causal relationship of the symptoms with the work activities were readily observable by a non-medically trained layperson, which was not the case in *Flint*.

15

In the case before us, Worker testified that the pain at night was worse than what she experienced during the day, and she never associated the pain at night with her job. However, the WCJ also heard Worker testify that (1) she began experiencing pain while typing at work as early as May 2006; (2) she noticed that the pain was aggravated at work; (3) the pain would get worse when she typed; and (4) in August 2006, the pain got so bad that she took off work for a week. Finally, the WCJ also heard testimony that Worker's pain dissipated while she took time off in August 2006. Although Worker equivocated during testimony and qualified her statement by saying that, in August, the pain did not get better at night, though it did get better during the day, she was impeached with her earlier deposition in which she simply stated that the pain diminished over her August break.

In light of all the testimony, the WCJ concluded that it was unreasonable to assume that Worker was unaware of a compensable injury in August 2006. To the extent that the issue about her pain not improving at night became an issue of credibility due to her impeachment, we again note that it is appropriate for this Court to defer to the fact finder on issues of credibility. *See Tallman*, 108 N.M. at 127, 767 P.2d at 366. To the extent that the WCJ simply thought it was unreasonable that Worker did not relate her pain to her work and concluded that, even absent a medical

16

diagnosis, she knew or should have known of her condition in August because of her causal experiences, we conclude that the evidence supports that determination.

**III.    CONCLUSION**

For the above reasons, we affirm the WCJ's compensation order.

**IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**LINDA M. VANZI, Judge**